PEOPLE v ROBIDEAU

PEOPLE v GRIFFIN

PEOPLE v BROWN

PEOPLE v BOUKNIGHT

Docket Nos. 64548, 64549, 66010, 67114, 67760. Argued June 7, 1983 (Calendar Nos. 4-7).—Decided September 18, 1984. Rehearing denied in *Griffin,* 420 Mich 1201.

Herbert M. Robideau was convicted by a jury in the Genesee Circuit Court, Ollie B. Bivins, Jr., J., of first-degree criminal sexual conduct, two counts of armed robbery, and possession of a firearm during the commission of a felony. One of the armed robberies was used as the underlying felony required to establish first-degree criminal sexual conduct. The Court of Appeals, M. J. Kelly, P.J., and M. F. Cavanagh and Cynar, JJ., affirmed (Docket Nos. 78-520, 78-521). The defendant appeals.

Randall D. Griffin was convicted by a jury in the Midland Circuit Court, Tyrone Gillespie, J., of first-degree criminal sexual conduct and kidnapping. The kidnapping was used as the underlying felony required to establish first-degree criminal sexual conduct. The Court of Appeals, M. F. Cavanagh, P.J., and D. E. Holbrook, Jr., and Piercey, JJ., affirmed in an unpublished opinion per curiam (Docket No. 78-3343). The defendant appeals.

Freddy L. Brown was convicted by a jury in the Calhoun Circuit Court, Paul Nicolich, J., of two counts of first-degree criminal sexual conduct and one of kidnapping. The kidnapping was used as the underlying felony required to establish one of the counts of first-degree criminal sexual conduct. The Court of

REFERENCES FOR POINTS IN HEADNOTES

[1, 7, 8, 11] 1 Am Jur 2d, Abduction and Kidnapping §§ 9, 28.

65 Am Jur 2d, Rape § 32.

67 Am Jur 2d, Robbery § 48.

[1, 7, 8, 11, 12] 21 Am Jur 2d, Criminal Law §§ 269, 276, 277, 279.

Seizure or detention for purpose of committing rape, robbery, or similar offense as constituting separate crime of kidnapping. 43 ALR3d 699.

[2, 4-7, 9, 10] 21 Am Jur 2d, Criminal Law §§ 244, 245, 551, 552.

[3] 21 Am Jur 2d, Criminal Law § 268.

Appeals, MacKenzie and Kallman, JJ. (R. B. Burns, P.J., dissenting), reversed the conviction of kidnapping and the conviction of criminal sexual conduct founded on it and remanded the case to the trial court with instructions that on retrial he could not be convicted on both charges under federal constitutional law (Docket No. 46103). The people appeal.

Chester Bouknight was convicted by a jury in the Recorder's Court of Detroit, Michael J. Connor, J., of first-degree criminal sexual conduct, two counts of armed robbery, and possession of a firearm during the commission of a felony. One of the armed robberies was used as the underlying felony required to establish first-degree criminal sexual conduct. The Court of Appeals, Bronson, P.J., and M. F. Cavanagh and N. J. Kaufman, JJ., vacated the conviction of the armed robbery used as the underlying felony on the ground that convictions of first-degree criminal sexual conduct and the underlying felony violated the double jeopardy provisions of the state constitution (Docket No. 48817). The people appeal.

In an opinion by Justice Brickley, joined by Chief Justice Williams and Justices Ryan and Boyle, the Supreme Court *held:*

Convictions in a single trial of both first-degree criminal sexual conduct and the underlying felony of armed robbery or kidnapping are not barred by the double jeopardy provisions of either the United States or the Michigan Constitution.

1. The Double Jeopardy Clause, in cases where multiple punishment is involved, acts as a restraint on the prosecutor and the courts, not on the Legislature. It prohibits a court from imposing more punishment than that intended by the Legislature. Whether punishments are multiple is a question of legislative intent. The Double Jeopardy Clause also protects a person against a second prosecution for the same offense after acquittal or conviction. Under the state constitution, the propriety of a second prosecution must be judged on whether part of the criminal transaction involved in the second trial was subject to a previous trial.

2. The test used by the Supreme Court of the United States as an aid in determining the intent of the Legislature, the *Blockburger* test, is that where the same act or transaction constitutes a violation of two distinct statutory provisions, whether there are two offenses or only one is determined by whether each provision requires proof of a fact which the other does not. In these cases one statute defines a compound crime, sexual penetration under circumstances involving the commission of any other felony, and another defines the predicate

crime, "any other felony", in these cases robbery or kidnapping. Application of the *Blockburger* test to compound and predicate crimes raises a difficulty; if only the statutory language is considered, the compound crime and the predicate crime are separate, because each has an element that the other does not; but if the actual proof of the compound crime is considered, it requires proof of the predicate crime. Neither the Supreme Court of the United States nor the Supreme Court of Michigan has been consistent in applying the test, but has applied it sometimes to the statutory language and sometimes to the proofs required in a particular case, with resulting confusion.

3. The confusion has been compounded by a failure to distinguish adequately between the different interests involved in successive-prosecution and single-prosecution cases. Where the issue is purely one of multiple punishments, rather than successive prosecutions, the defendant's interest is in not having greater punishment imposed than that intended by the Legislature. Thus, the intent of the Legislature is determinative. A test which focuses on whether one offense is a lesser included offense of another is of no aid in making such ultimate determination. Instead, the intent of the Legislature should be determined by reference to the subjects of the statutes, their language, and their history. Statutes prohibiting conduct which is violative of distinct social norms generally can be viewed as separate and amenable to permitting multiple punishment. However, where two statutes prohibit violation of the same social norm in a somewhat different manner, or where one statute incorporates most of the elements of a base statute, but increases the penalty where aggravating conduct occurs, it is evidence that the Legislature did not intend punishment under both statutes. If no conclusive evidence of legislative intent can be discerned, the rule of lenity requires the conclusion that separate punishments were not intended.

4. The focus of first-degree criminal sexual conduct is clearly on penetration. Sexual penetration, regardless of the circumstances, violates social norms distinct from those norms violated by the predicate felony—in these cases, robbery or kidnapping. That the common element of the many ways of establishing first-degree criminal sexual conduct is penetration suggests that the Legislature intended separate punishment for first-degree criminal sexual conduct and the underlying felony. In addition, the fact that first-degree criminal sexual conduct and the predicate crimes of robbery and kidnapping carry the

same penalties strongly suggests that the Legislature intended that the crimes be separately punished. To suggest that the Legislature intended first-degree criminal sexual conduct to subsume a co-equal felony would attribute to the Legislature a total lack of purpose. Only when a conviction is allowed of both the predicate felony and of first-degree criminal sexual conduct is there any purpose in having the crime of penetration under circumstances involving any other felony.

*Robideau,* affirmed.

*Griffin,* reversed and remanded.

*Brown,* affirmed, and the cause remanded to the trial court for further proceedings.

*Bouknight,* reversed.

Justice Levin wrote separately. The Double Jeopardy Clause is not violated by the convictions in these cases of a theft or kidnapping offense and of a criminal sexual conduct offense, but punishing a defendant for first-degree criminal sexual conduct because the sexual assault occurred during the commission of another felony and additionally punishing him for the other felony does violate the Double Jeopardy Clause because it *punishes* the defendant twice for the same felony.

When convictions of first-degree criminal sexual conduct and underlying convictions of robbery or kidnapping become final, the defendant is entitled to have the judgment amended so as not to be punished twice for the same offense.

In these cases, the prosecutors should be required to elect either reduction of the sentences imposed for first-degree criminal sexual conduct to the maximum sentence possible for third-degree criminal sexual conduct with no change in the sentences imposed for the predicate felonies or elimination of the sentences imposed for the predicate felonies with no change in the sentences imposed for the first-degree criminal sexual conduct convictions.

The Court's new test launches the trial courts, the Court of Appeals, and the Supreme Court on an elusive search for clear or conclusive evidence of legislative intent. In these cases, the circumstance that the predicate crimes of armed robbery and kidnapping carry maximum penalties of life in prison, as does first-degree criminal sexual conduct, "is taken to suggest" that the Legislature intended separate punishments for the criminal sexual conduct and the predicate offense. This ignores that the predicate felony might carry a lesser punishment and that it is unlikely that the Legislature intended separate punishment with respect to some predicate felonies and not others, suggest-

ing the absence of clear or conclusive evidence of legislative intent to provide for cumulative or separate sentencing.

Justice Kavanagh dissented. Convictions of first-degree criminal sexual conduct involving the commission of another felony and the underlying felony of armed robbery or kidnapping contravene the state constitutional guarantee against being placed twice in jeopardy for the same offense, requiring vacation of the conviction of the underlying felony.

1. The state constitution provides that no person may be placed in danger of conviction of the same offense twice, either in one trial or in successive trials. The people contend that the Double Jeopardy Clause restrains courts and prosecutors, but not the Legislature; that whether defendants may be simultaneously prosecuted for the two offenses depends on whether the Legislature intended them to be. That contention is supported by neither precedent nor reason. The underlying principle of the Double Jeopardy Clause is that no person should be punished twice for one offense. Legislative authority to define offenses does not mean that the Legislature may subject a defendant to jeopardy for two offenses which are the same, nor does it mean that the legislative intent to punish separately may turn what is, in effect, one legal offense into two.

2. While legislative intent is informative, it is not dispositive. The vital inquiry is whether the offenses are the same. In these cases, conviction of first-degree criminal sexual conduct required proof of armed robbery or kidnapping. The underlying felony was a necessary element of the criminal sexual conduct. The fact that any felony suffices does not mean that the felony alleged is not a necessarily included offense. The question is not whether the lesser offense is by definition necessarily included, but whether on the facts of the case it is. On the facts of these cases, the underlying felonies were lesser included offenses of first-degree criminal sexual conduct. Because the defendants were convicted of both first-degree criminal sexual conduct and the underlying felony, they were placed twice in jeopardy.

Justice Cavanagh participated and dissented in *Brown* only. If one offense is a necessarily or cognate lesser included offense of another, it is the same offense for state double jeopardy purposes. In *Brown,* convictions of first-degree criminal sexual conduct on the basis of sexual penetration under circumstances involving any other felony and the underlying offense of kidnapping violated the state constitutional prohibition against double jeopardy. The underlying or predicate offense is included within the greater or compound offense which relies on it for a conviction. Impos-

ing punishments for both offenses amounts to constitutionally impermissible multiple punishment for the same offense.

94 Mich App 663; 289 NW2d 846 (1980) affirmed.

105 Mich App 58; 306 NW2d 392 (1981) affirmed.

106 Mich App 798; 308 NW2d 703 (1981) reversed.

OPINION OF THE COURT

1. RAPE — KIDNAPPING — ARMED ROBBERY — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — DOUBLE JEOPARDY.

Convictions in a single trial of both first-degree criminal sexual conduct and the underlying felony of armed robbery or kidnapping are not barred by the double jeopardy provisions of either the United States or the Michigan Constitution (US Const, Am V; Const 1963, art 1, § 15; MCL 750.349, 750.520b[1][c], 750.529; MSA 28.581, 28.788[2][1][c], 28.797).

2. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The Double Jeopardy Clause, in cases where multiple punishment is involved, acts as a restraint on the prosecutor and the courts and not the Legislature, prohibiting the imposition of greater punishment than that intended by the Legislature; whether punishments are multiple is a question of legislative intent (US Const, Am V; Const 1963, art 1, § 15).

3. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction; under the Michigan Constitution, the propriety of a second prosecution must be judged on whether part of the criminal transaction involved in the second trial was subject to a previous trial (US Const, Am V; Const 1963, art 1, § 15).

4. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENT.

The question what punishment is constitutionally permissible in a case where the issue is purely multiple punishments and not successive prosecutions is no different from the question what punishment the legislative branch intended to be imposed (US Const, Am V; Const 1963, art 1, § 15).

5. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENT.

The intent of the Legislature in imposing punishment for violation of criminal statutes should be determined for purposes of double jeopardy analysis by reference to the subject of the statutes, their language, and their history.

6. CRIMINAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENT.

Statutes prohibiting conduct violative of distinct social norms generally are viewed as separate and amenable to permitting the imposition of multiple punishment; however, where two statutes prohibit violations of the same social norm in a different manner, or where a statute which incorporates most of the elements of a base statute increases the penalty for violation where there is aggravating conduct, it is evidence that the Legislature did not intend punishment to be imposed under both statutes for one transaction.

SEPARATE OPINION BY LEVIN, J.

7. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY — CRIMINAL SEXUAL CONDUCT.

*Conviction of a criminal sexual conduct offense and another felony in the same case does not violate the Double Jeopardy Clause; however, where the criminal sexual conduct charge is elevated to first-degree criminal sexual conduct because the sexual assault occurred during the commission of the other felony, imposition of sentences for first-degree criminal sexual conduct and for the other felony does violate the Double Jeopardy Clause because it punishes the defendant twice for the same felony (Const 1963, art 1, § 15; MCL 750.520b[1][c]; MSA 28.788[2][1][c]).*

DISSENTING OPINION BY KAVANAGH, J.

8. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — KIDNAPPING — ARMED ROBBERY — DOUBLE JEOPARDY.

*Convictions of both first-degree criminal sexual conduct involving commission of another felony and the underlying felony of armed robbery or kidnapping contravene the state constitutional guarantee against being placed twice in jeopardy for the same offense (Const 1963, art 1, § 15; MCL 750.349, 750.520b[1][c], 750.529; MSA 28.581, 28.788[2][1][c], 28.797).*

9. CRIMINAL LAW — DOUBLE JEOPARDY — LEGISLATIVE AUTHORITY.

*The Double Jeopardy Clause limits the authority of the Legislature, as well as courts and prosecutors, to punish a criminal act accompanied by an underlying felony and the underlying felony as separate offenses; legislative authority to define offenses does not mean that a defendant may be subjected to jeopardy for two offenses which are the same, nor that legislative intent to punish separately may turn what is, in effect, one legal offense into two (Const 1963, art 1, § 15).*

10. CRIMINAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENT.

*A defendant may not be convicted at the same or at a subsequent trial of two statutory offenses that are the same offense for double jeopardy purposes; the starting point of the analysis is always the Legislature's statement of a criminal offense and a comparison of the offenses of which the defendant was convicted (Const 1963, art 1, § 15).*

11. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — KIDNAPPING — ARMED ROBBERY — DOUBLE JEOPARDY.

*Armed robbery and kidnapping were lesser included offenses of first-degree criminal sexual conduct involving commission of another felony where the armed robbery or kidnapping was a necessary element of the first-degree criminal sexual conduct; conviction of both first-degree criminal sexual conduct and the underlying felony placed the defendants twice in jeopardy (Const 1963, art 1, § 15; MCL 750.349, 750.520b[1][c], 750.529; MSA 28.581, 28.788[2][1][c], 28.797).*

DISSENTING OPINION BY CAVANAGH, J.

12. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

*Where one offense is a necessarily or cognate lesser included offense of another, it is the same offense for state double jeopardy purposes (Const 1963, art 1, § 15).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people in *Robideau.*

*Earl R. Spuhler* for defendant Robideau.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Conrad J. Sindt,* Prosecuting Attorney, and *John H. MacFarlane,* Chief Assistant Prosecutor, for the people in *Brown.*

State Appellate Defender (by *P. E. Bennett)* for defendant Brown.

State Appellate Defender (by *Kim Robert Fawcett)* for defendant Griffin.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy A. Baughman,* Principal Attorney, Appeals, for the people in *Bouknight.*

BRICKLEY, J. These cases require us to decide whether the prohibition in either the United States or Michigan Constitution[1] against placing a person twice in jeopardy prohibits, in a single trial, convictions of both first-degree criminal sexual conduct under MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) (penetration under circumstances involving any "other felony") and the underlying "other felony" of either armed robbery or kidnapping used to prove the charge of first-degree criminal sexual conduct. We hold that convictions of both first-degree criminal sexual conduct and the underlying felony of armed robbery or kidnapping in a single trial are not barred by either constitution.

Herbert Robideau was convicted of first-degree criminal sexual conduct, two counts of armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). The Court of Appeals

---

[1] US Const, Am V provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

Const 1963, art 1, § 15 provides:

"No person shall be subject for the same offense to be twice put in jeopardy."

affirmed his convictions, finding no violation of the prohibitions against double jeopardy, notwithstanding that one of the armed robbery counts was used as the "other felony" to establish the crime of first-degree criminal sexual conduct. 94 Mich App 663; 289 NW2d 846 (1980). We granted leave to appeal. 412 Mich 871 (1981).

Chester Bouknight was convicted of first-degree criminal sexual conduct, two counts of armed robbery, and possession of a firearm during the commission of a felony. One of the armed robbery counts was used as the "other felony" to establish the crime of first-degree criminal sexual conduct. The Court of Appeals vacated that armed robbery conviction, finding that, although the multiple convictions did not violate the federal constitution, the convictions of first-degree criminal sexual conduct and the underlying "other felony" did violate the Michigan Constitution. 106 Mich App 798; 308 NW2d 703 (1981). We granted leave to appeal. 412 Mich 871 (1981).

Freddy Lee Brown was convicted of two counts of first-degree criminal sexual conduct (penetration under circumstances involving any other felony and another penetration while armed, MCL 750.520b[1][e]; MSA 28.788[2][1][e]). Brown was also convicted of kidnapping, MCL 750.349; MSA 28.581, the "other felony" used to establish one count of first-degree criminal sexual conduct. The Court of Appeals reversed Brown's convictions for penetration under circumstances involving any other felony and for kidnapping because of an instructional error on the authority of *People v Barker*, 411 Mich 291; 307 NW2d 61 (1981). The Court affirmed his conviction under MCL 750.520b(1)(e); MSA 28.788(2)(1)(e) and remanded the case for retrial. The Court instructed that on

remand Brown, consistent with the provisions of the federal constitution, could not again be convicted of both penetration under circumstances involving any other felony and the underlying "other felony" of kidnapping. 105 Mich App 58; 306 NW2d 392 (1981). We granted leave to appeal. 412 Mich 864 (1981).

Randall Dale Griffin was convicted of first-degree criminal sexual conduct and kidnapping, with the kidnapping being used to establish the "other felony" for first-degree criminal sexual conduct. The Court of Appeals affirmed his conviction in an unpublished opinion per curiam, released August 14, 1980. We granted leave to appeal. 412 Mich 871 (1981).

The basic contour of the Double Jeopardy Clause was succinctly set forth in *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969):

"It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."

In *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969), the United States Supreme Court held that the federal Double Jeopardy Clause was applicable to actions by the states. The present cases concern the third protection, the protection against multiple punishment, and, in order to decide them, as well as to give some guidance in an area that has been described as a state of "confusion upon confusion"[2] and a

_____

[2] Note, *Criminal Law—Double Jeopardy,* 24 Minn L Rev 522 (1940).

"veritable Sargasso Sea",[3] we must begin with a review of the multiple-punishment aspects of the Double Jeopardy Clause as declared by the United States Supreme Court, as best those decisions can be interpreted.

We begin by stating what is, at least at the time of this decision, settled law. Where multiple punishment is involved, the Double Jeopardy Clause acts as a restraint on the prosecutor and the courts, not the Legislature. *Brown v Ohio,* 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977).

The Double Jeopardy Clause prohibits a court from imposing more punishment than that intended by the Legislature. "[T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized". *Whalen v United States,* 445 US 684, 688; 100 S Ct 1432; 63 L Ed 2d 715 (1980). The most recent expression of this principle is found in *Ohio v Johnson,* — US —; 104 S Ct 2536, 2541; 81 L Ed 2d 425, 433 (1984):

"In contrast to the double jeopardy protection against multiple trials, the final component of double jeopardy —protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, *United States v Wiltberger,* 18 US (5 Wheat) 76, 93; 5 L Ed 37 (1820), the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent, see *Missouri v Hunter,* 459 US 359; 103 S Ct 673; 74 L Ed 2d 535 (1983)."[4]

---

[3] *Albernaz v United States,* 450 US 333, 343; 101 S Ct 1137; 67 L Ed 2d 275 (1981).

[4] It has been suggested that issues of multiple punishment could be

As an aid to determining the intent of a legislature, the Supreme Court has used an approach which, although first established in *Gavieres v United States*, 220 US 338, 342; 31 S Ct 421; 55 L Ed 489 (1911), is now known as the *Blockburger* test because of its use in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932):

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

If two statutes constitute the "same offense" under the *Blockburger* test, it is presumed that the Legislature did not intend to allow the defendant to be punished under both statutes.

"The assumption underlying the rule is that [the Legislature] ordinarily does not intend to punish the same offense under two different statutes." *Whalen v United States, supra,* pp 691-692.

The presumption raised by the test can be rebutted by a clear indication of legislative intent, and when such an intent is found, it must be respected, regardless of the outcome of the *Blockburger* test. *Albernaz v United States*, 450 US 333, 340; 101 S

better analyzed under the Due Process Clause and under the prohibitions against cruel and unusual punishments of the Eighth Amendment instead of under the Double Jeopardy Clause. See Westen & Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Supreme Court Review 81, 114-115. Although such an approach makes eminent sense on the basis of a literal reading of the Fifth Amendment and for analytical consistency, the United States Supreme Court has placed multiple punishment within the ambit of double jeopardy.

Ct 1137; 67 L Ed 2d 275 (1981); *Missouri v Hunter,*
459 US 359; 103 S Ct 673; 74 L Ed 2d 535 (1983).

Although the *Blockburger* test is simply stated,
it is subject to more than one interpretation, de-
pending on the statutes involved. When one of the
two statutes involved is a necessarily lesser in-
cluded offense of the other, application of the
*Blockburger* test will always raise the presumption
that the two statutes involve the "same offense".
The necessarily included lesser offense will never
have an element not required by the greater of-
fense. Problems arise, however, when one statute
is not a lesser included offense of the other. Such
is the case with the so-called compound and predi-
cate crimes that are involved in the cases before
us. The compound crime of first-degree criminal
sexual conduct requires proof of a penetration
during the commission of any other felony. The
"any other felony" is the predicate crime, in these
cases, either armed robbery or kidnapping.

If one looks only to the statutory language, the
compound and predicate crimes are separate un-
der the *Blockburger* test. First-degree criminal
sexual conduct *requires* proof of a penetration, an
element not required by either kidnapping or rob-
bery. Armed robbery requires proof of an armed
taking from the person or in the presence of
another, and kidnapping requires the movement
or confinement of another. None of these elements
are, in the strict sense, *required* for the crime of
first-degree criminal sexual conduct. Any felony
will do.

If, however, one looks to how the crimes with
which the defendants were charged were actually
proved—the evidence used—the compound crime
of first-degree criminal sexual conduct and the
predicate crime of either robbery or kidnapping

are not separate offenses under *Blockburger.* In the cases of *Robideau* and *Bouknight,* the prosecution convicted the defendants of the predicate crime of armed robbery and also used the predicate crime of armed robbery to establish the "other felony" to convict the defendants of the compound crime of first-degree criminal sexual conduct. Similarly, in the cases of *Griffin* and *Brown,* the defendants were convicted of the predicate crime of kidnapping, and the kidnapping was used to establish the "other felony" to convict them of first-degree criminal sexual conduct. Looking to the *facts of the case* instead of at the statutes in the abstract in all four cases before us, the prosecutor was required to prove the predicate crime to establish the compound crime. If *Blockburger* is applied to the facts of the cases, the compound and predicate crimes are presumptively the same offense.

This Court and the United States Supreme Court have applied both approaches to the *Blockburger* test for reasons not always explicable. The resulting confusion has been compounded by a failure to adequately distinguish between the different interests involved in successive-prosecution versus single-prosecution cases. Nevertheless, we must begin with a review of some of the double jeopardy cases decided by the United States Supreme Court to determine whether the *Blockburger* test is to be applied in the abstract or to the facts of the cases before us, or whether it should be applied at all.

In *Blockburger,* the defendant was convicted in a single trial of selling narcotics not in or from their original stamped package and of selling narcotics without an official written order. The two convictions resulted from the same sale. The Court

looked to the statutory definitions of the crimes, as evidenced by the Court's statement that "[e]ach of the offenses created requires proof of a different element". *Id.,* p 304. The Court concluded that because the first statute required proof that the narcotics were not sold in or from their original container, while the second did not, and the second statute required proof that the sale was made without an official order, while the first did not, the two crimes were separate. Therefore, the defendant could be doubly punished, notwithstanding the legislative "double-description" of crimes that had made one act into two crimes.

Although *Blockburger* did not specifically state that the test used was for determining legislative intent by looking to the statutory elements of a crime, later decisions made that point clear. In *Gore v United States,* 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958), the Court stressed that *Blockburger* had been decided as a matter of legislative intent. In *Iannelli v United States,* 420 US 770, 785, fn 17; 95 S Ct 1284; 43 L Ed 2d 616 (1975), the Court, in concluding that under the *Blockburger* test conspiracy to violate gambling laws and violation of gambling laws were separate offenses, stated that "the test focuses on the statutory elements of the offense * * * notwithstanding a substantial overlap in the proof offered to establish the crimes".

The *Blockburger* test was applied in a case involving a successive prosecution in *Brown v Ohio,* 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977). The case involved a defendant who was convicted of joy-riding. After his release from jail, he was charged with automobile theft, a crime of which joy-riding, under Ohio law, was a necessarily included lesser offense, *i.e.,* all the elements of

joy-riding were also elements of automobile theft. As is always the case when true necessarily included lesser and greater offenses are involved, the Court's application of the *Blockburger* test resulted in a finding that the two crimes constituted the "same offense" and, therefore, were not to be separately punished.

Justice Brennan, in his concurring opinion, did not apply the *Blockburger* test. He instead treated the case as if issues of multiple punishment were not involved and proposed deciding the case on the ground that the interest of the defendant in avoiding a second trial barred the second prosecution. In previous cases involving successive prosecutions, the Court had applied the factual approach of *In re Nielsen,* 131 US 176; 9 S Ct 672; 33 L Ed 118 (1889). If the same evidence used in the first trial was to be substantially used in the second trial, the defendant could not constitutionally be tried a second time. As stated in *Nielsen, supra,* p 188:

"[A] person [who] has been tried and convicted for a crime which has various incidents included in it * * * cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense."

But Justice Brennan would have gone beyond the approach of *Nielsen.* He viewed all successive prosecutions as barred by the Double Jeopardy Clause if the second trial involved a part of the same transaction litigated in the first trial. So long as the same transaction of criminal events was involved, Justice Brennan would require that all charges possible be brought against the defendant in the first trial.

The majority's decision in *Brown* was criticized

as reaching the right decision for the wrong reason. See Westen & Drubel, *Toward a General Theory of Double Jeopardy,* 1978 Supreme Court Review 81, 157. Perhaps, however, the most valid criticism is that the Court failed to fully explain its reasoning. The opinion never addressed why the traditional successive prosecution analysis of *Nielsen, supra,* was not applied.

In our opinion, the *Brown* Court's failure to apply the reasoning of *Nielsen* appears to be explained by its statement that "[w]here the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings". *Brown, supra,* p 166. It thus appears that *Brown* was decided as if the only issue were one of multiple punishment. Multiple punishment could not be imposed under the statutes in question, regardless of the number of trials. It was therefore unnecessary for the Court to decide whether, if allowed, multiple punishments could be imposed in separate trials.

In *Harris v Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), another case involving successive prosecution which also presented to the Court its first compound and predicate crimes, the Court inexplicably reverted to the analysis of *Nielsen* and ignored *Blockburger.* The Oklahoma Legislature had linked two crimes, allowing the predicate crime of robbery to act as one of the aggravating crimes which raised second-degree murder to the compound crime of first-degree felony murder. The defendant had been tried and convicted of first-degree felony murder in the course of a robbery. The defendant was subsequently tried and convicted of the predicate robbery.

The Supreme Court's opinion per curiam reversing the subsequent robbery conviction, without mentioning *Blockburger,* simply stated that the conviction of the greater crime could not be had without a conviction of the lesser crime, and for authority relied upon *Nielsen.* Unlike *Brown,* the case was decided on the ground that it involved a successive prosecution. Doing so suggests that the crimes in question had satisfied the *Blockburger* test and that multiple punishments in a single trial would be allowed. That result can be reached only if one applies the *Blockburger* test to the elements of the crimes in question in the abstract, *i.e.,* first-degree murder *requires* proof of a killing, which robbery, of course, does not, and robbery requires proof of a robbery, which is not *required* to establish first-degree murder (under Oklahoma law, any specified felony would do). Applying the *Blockburger* test to the facts of the case before the Court would show that robbery was, in fact, *required* to prove first-degree murder, and it would, therefore, have been unnecessary to consider the case under the analysis of *Nielsen.*

If the Court in *Harris* had indeed silently applied the *Blockburger* test in the abstract to the statutes before it, its method of analysis could be considered consistent with prior law. After all, numerous decisions had stated that *Blockburger* looked to the statutory elements of a crime. Yet, when faced with the next case involving a compound and predicate crime, the Court applied *Blockburger* to the facts of the case.

In *Whalen v United States,* 445 US 684; 100 S Ct 1432; 63 L Ed 2d 715 (1980), the defendant was charged in a single prosecution with the compound crime of first-degree felony murder and also with rape, a predicate crime which elevated second-de-

gree murder to first. In an apparent effort to achieve the same result as that reached in *Harris,* notwithstanding that *Harris* was decided in the context of successive prosecutions, the Court, despite a footnote disclaimer to the contrary, refocused *Blockburger* away from the elements of the charged crimes. The result was that the Court transformed the *Blockburger* test into one that looked to the conduct which led to the charges against the defendant or to the actual facts proved at trial, all the while suggesting that they could be indicative of legislative intent:

"In this case, resort to the *Blockburger* rule leads to the conclusion that Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape, since it is plainly not the case that 'each provision requires proof of a fact which the other does not.' A conviction for killing in the course of rape cannot be had without proving all the elements of the offense of rape. See *United States v Greene,* 160 US App DC 21, 34; 489 F2d 1145, 1158 (1973). *Cf. Harris v Oklahoma,* 433 US 682, 682-683; 97 S Ct 2912; 53 L Ed 2d 1054 (1977). The Government contends that felony murder and rape are not the 'same' offense under *Blockburger,* since the former offense does not in all cases require proof of a rape; that is, DC Code § 22-2401 (1973) proscribes the killing of another person in the course of committing rape *or* robbery *or* kidnaping *or* arson, etc. Where the offense to be proved does not include proof of rape—for example, where the offense is a killing in the perpetration of a robbery—the offense is of course different from the offense of rape, and the Government is correct in believing that cumulative punishments for the felony murder and for a rape would be permitted under *Blockburger.* In the present case, however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of

every element of another offense." *Whalen, supra,* pp 693-694.

The dissenting justices recognized the majority's transformation of *Blockburger* into a factual test, noting that doing so was without precedent and contrary to the avowed purpose of the test to determine legislative intent. Nevertheless, the dissenters did not propose to decide the case using *Blockburger.* They instead proposed looking to all sources of legislative history rather than relying on the "arbitrary assumptions" and "syntactical subtleties" implicit in any application of *Blockburger* to compound and predicate crimes. *Whalen, supra,* p 712.

The application of *Blockburger* to the facts of a given case when multiple punishment was involved proved to be a short-lived practice. In *Albernaz v United States,* 450 US 333, 338; 101 S Ct 1137; 67 L Ed 2d 275 (1981), the Court repaired to its description of the *Blockburger* test as one which " 'focuses on the statutory elements of the offense' ". The Court found that the offense of conspiracy to import marijuana and conspiracy to distribute marijuana could be separately punished even though on the facts of the case there was but one conspiracy. The Court's conclusion that the two statutes before it were separate under *Blockburger,* however, did not end its inquiry. The Court noted that the *Blockburger* test was merely a means to determine legislative intent. The presumptions created by the test could be rebutted by a clear indication of legislative intent to the contrary.

The Supreme Court found such a clear indication of legislative intent in *Missouri v Hunter, supra. Hunter* involved a single prosecution where the defendant was convicted of the compound

crime of "armed criminal action" (possession of a dangerous weapon during the commission of any felony) and the underlying predicate crime on the facts of the case, armed robbery. The Missouri Court of Appeals reversed the defendant's conviction of armed criminal activity, relying on decisions of the Missouri Supreme Court, which had applied the *Blockburger* test to the facts of the cases before it and concluded that the Double Jeopardy Clause was offended by convictions of both armed criminal action and the predicate felony. See *State v Haggard*, 619 SW2d 44 (Mo, 1981). The Missouri Supreme Court reached that conclusion notwithstanding the Missouri Legislature's express provision for double punishment in the statute.

The United States Supreme Court did not disapprove the Missouri Supreme Court's interpretation of *Blockburger*, but found that the Missouri Legislature had expressly rebutted the presumption raised by the statute's failure to pass the *Blockburger* test. Even though armed criminal action and the underlying predicate, armed robbery, were the same offense under the *Whalen* factual approach to *Blockburger*, multiple punishment was permissible because the Legislature had so intended.

The United States Supreme Court's treatment of issues of multiple punishment suggests a struggle, and an unsuccessful one, to prescribe a single standard applicable to the statutes considered. It especially evidences recent difficulty in multiple punishment cases where compound, or legislatively linked, crimes are involved. In multiple punishment cases, the Court, with one exception, has applied the *Blockburger* test to the statutory elements of crimes. This one exception, however,

which looked to the facts of a case involving a compound and predicate crime, is analogous to the present case. The question left unanswered by the Supreme Court is whether the analysis of *Whalen* is the proper analysis when compound and predicate crimes are involved. The inconsistency of federal case law forces us to turn to state law for guidance.

In comparison with the United States Supreme Court's treatment of issues of multiple punishment, our Court's experience has been similarly rocky, although we have followed a somewhat different path. As was the experience of the United States Supreme Court, the first double jeopardy cases to come before this Court involved successive prosecutions. In *People v Cox,* 107 Mich 435; 65 NW 283 (1895), the defendant was tried and convicted of keeping a bawdy house. He was later tried and convicted of keeping the same house as a house of ill fame under a separate statute. In an opinion by Justice HOOKER, this Court reversed the defendant's conviction, finding that on the facts of the case one statute was included within the other. The opinion of the United States Supreme Court in *Nielsen, supra,* was found to be "decisive".

By the time this Court first dealt with an issue of multiple punishment in a single trial, a factual, same-evidence approach was well established in successive prosecution cases. See *People v Cook,* 236 Mich 333; 210 NW 296 (1926); *People v Beverly,* 247 Mich 353; 225 NW2d 481 (1929). In *People v White,* 390 Mich 245; 212 NW2d 222 (1973), this Court even extended the double jeopardy protection from successive prosecutions by adopting, under the Michigan Constitution, Justice Brennan's transactional approach. See *Ashe v*

*Swenson,* 397 US 436, 448; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (Brennan, J., *concurring).* This approach expands the United States Supreme Court's same-evidence test by forbidding a second trial when part of the criminal transaction has been subject to a prior trial.

In *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976), this Court faced its first single-prosecution, multiple-punishment case. The defendant had been convicted both of delivery of heroin and possession of heroin. Without reference to *Blockburger* or to legislative intent, we found that the prohibition against double jeopardy had been violated because "[p]ossession of the heroin present in *this* case was that necessary to its delivery". *Id.,* p 307. The rationale for looking to the facts of the case to see if any facts were doing double duty with respect to the two statutes was *People v Cook, supra,* a successive prosecution case. See, also, *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977), which applied the same analysis and reached the same result under the statutes replaced by those considered in *Martin.*

This Court first faced a compound and predicate crime situation in *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), *app dis sub nom Brintley v Michigan,* 444 US 948; 100 S Ct 418; 63 L Ed 2d 317 (1979). There, the two defendants had been convicted of the compound crime of possession of a firearm during the commission of a felony and also of an underlying predicate felony, either murder or armed robbery. We applied the *Blockburger* test to the statutes in the abstract and found that the two crimes were separate: murder does not require use of a firearm and felony-firearm does not require the predicate felony to be murder; armed robbery

does not require the use of a firearm and felony-firearm does not require the predicate felony to be armed robbery. More importantly, we recognized for the first time that issues of multiple punishment were to be decided by determining what the Legislature intended. Because the Legislature had expressly provided that felony-firearm was to be punished separately from and consecutive to the predicate felony, all double jeopardy concerns were satisfied. Since the decision in *Wayne County Prosecutor,* however, we have failed to look to legislative intent.

In *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980), the defendant, in a transaction arising out of a robbery of a gas station, was charged with and convicted in a single trial of larceny over $100, larceny in a building, and armed robbery. We applied the *Blockburger* test, but to the facts of the case rather than to the statutes in the abstract. As a matter of Michigan constitutional law, we found that multiple punishment under the statutes was impermissible because on the facts of the case before the Court the same facts proved all three crimes.

In *People v Wilder,* 411 Mich 328; 308 NW2d 112 (1981), we confronted, as did the United States Supreme Court in *Whalen,* a single prosecution where the defendant was convicted of both the compound crime of first-degree felony murder and of the underlying predicate felony. Again, we applied a method of analysis taken from successive-prosecution cases such as *Cook* and *Harris,* and looked to the facts of the case. Because, in the case before the Court, proof of the charged predicate felony also served as proof of the compound felony of first-degree murder, we found that convictions of both crimes on the facts of the case violated the prohibition against double jeopardy.

We next decided *People v Carter,* 415 Mich 558; 330 NW2d 314 (1982). There, the defendant was convicted in a single trial of both aiding and abetting the crime of extortion and conspiracy to commit extortion. We found no federal double jeopardy violation after applying the *Blockburger* test to the statutes in the abstract. Each crime required proof of an element not required by the other. We also found no violation of the prohibition against double jeopardy under a factual approach even though the facts used to establish the aiding and abetting could also have established the conspiracy. Other facts also had been introduced into evidence which could have proved the conspiracy. In essence, for the reason that the prosecutor over-proved his case, we found no violation of the Michigan prohibition against double jeopardy. Still, we recognized that it is the intent of the Legislature which should be determinative. That realization is implicit in our statement that the crimes involved were not of the "class or category". *Id.,* p 586.

Our latest experience with issues of multiple punishment came in *People v Wakeford,* 418 Mich 95; 341 NW2d 68 (1983). There, we dealt not with the issue of multiple punishment under two statutes, but, instead, with multiple punishment under a single statute. The issue before the Court was whether the robbery of two grocery store cashiers constituted one or two robberies. Our focus was entirely on the robbery statute and legislative intent. Because only one statute was involved, an analysis under *Blockburger* was unnecessary. Our task was only to determine what act the Legislature had made criminal.

We concluded in *Wakeford* that the Legislature intended separate robbery convictions for each

person robbed, the focus of robbery being on the assault against a person and not on the owner of the property taken. In doing so, we rejected the claim that the defendant's convictions were invalid because some of the same evidence was used in proving both robberies. *Wakeford,* however, does not answer the question now before us. Multiple punishment analysis when only one statute is involved has never been burdened by a shifting interpretation of *Blockburger.*

As can be seen from the above review, when more than one statute is involved, Michigan's double jeopardy analysis has been no more consistent than federal double jeopardy analysis. We do come to the conclusion that much of the inconsistency in double jeopardy analysis results from the failure to clearly distinguish between single-prosecution and successive-prosecution cases. We will, therefore, undertake that task.

Successive-prosecution cases involve the core values of the Double Jeopardy Clause, the common-law concepts of *autrefois acquit* and *convict.* See *Bartkus v Illinois (On Rehearing),* 359 US 121, 151; 79 S Ct 676; 3 L Ed 2d 684 (1959) (Black, J., *dissenting).* Where successive prosecutions are involved, the Double Jeopardy Clause protects the individual's interest in not having to twice "run the gauntlet", in not being subjected to "embarrassment, expense and ordeal", and in not being compelled "to live in a continuing state of anxiety and insecurity", with enhancement of the "possibility that even though innocent he may be found guilty". *Green v United States,* 355 US 184, 187, 190; 78 S Ct 221; 2 L Ed 2d 199 (1957).

To protect this interest, the United States Supreme Court has adopted a factual-evidentiary approach, *Nielsen, supra,* and, where appropriate,

a collateral estoppel approach, *Ashe v Swenson, supra.* Both these approaches look to the evidence produced at the first trial to determine if the same facts or issues will be proved at the second. But these approaches are limited. They allow for the possibility that a transaction could be divided into discrete offenses, with successive trials for each offense. To preclude that possibility, this Court, in *People v White,* adopted Justice Brennan's transactional approach as the standard by which the propriety of a second prosecution is judged under the Michigan Constitution.

Different interests are involved when the issue is purely one of multiple punishments, without the complications of a successive prosecution. The right to be free from vexatious proceedings simply is not present. The only interest of the defendant is in not having more punishment imposed than that intended by the Legislature. The intent of the Legislature, therefore, is determinative. Under neither the federal nor the Michigan double jeopardy provisions does this Court sit as a superlegislature, instructing the Legislature on what it can make separate crimes.[5] As previously described, prior decisions of this Court have applied a factual test in single-trial multiple-punishment cases, creating areas in which arguably the Legislature cannot now act. To the extent that those decisions interpret the prohibition against double jeopardy as a substantive limitation on the Legislature, we now disavow them.

We are therefore left only with the question of what the Legislature intended in cases such as those at bar. As a means of determining that end, we find the *Blockburger* test to have questionable

---

[5] Of course, there are other constitutional limitations on the Legislature's ability to create crimes.

status in the Supreme Court of the United States and find the propriety of its use in any case to be questionable. When applied in the abstract to the statutory elements of an offense, it merely serves to identify true lesser included offenses. While it may be true that the Legislature ordinarily does not intend multiple punishments when one crime is completely subsumed in another, *Blockburger* itself is of no aid in making the ultimate determination. Although its creation of a presumption may make a court's task easier, it may also induce a court to avoid difficult questions of legislative intent in favor of the wooden application of a simplistic test.

Because *Blockburger* was developed to deal with situations where an identifiable single act falls under the coverage of two statutes, it is even less helpful when applied to a compound crime. In these crimes, the Legislature has intentionally converted what would normally be two discrete acts into one legislatively created "act".

The difficulties with the *Blockburger* test lead us to the conclusion that it should be abandoned. The United States Supreme Court has declared that it is but a test of statutory construction and not a principle of constitutional law. *Missouri v Hunter, supra.* Indeed, it would be quite contrary to established principles of federalism for the United States Supreme Court to impose on the states the method by which they must interpret the actions of their own legislatures. We, therefore, find it within our power to reject the *Blockburger* test, preferring instead to use traditional means to determine the intent of the Legislature: the subject, language, and history of the statutes.

At times, this will be a difficult task. The Legislature rarely reveals its intentions with a specific

statement. Yet the difficulty in determining the intent of the Legislature cannot be cause for furthering the use of a test which reveals little, if anything, about legislative intent.

Some general principles can be stated. Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments. A court must identify the type of harm the Legislature intended to prevent. Where two statutes prohibit violations of the same social norm, albeit in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments. For example, the crimes of larceny over $100, MCL 750.356; MSA 28.588, and larceny in a building, MCL 750.360; MSA 28.592, although having separate elements, are aimed at conduct too similar to conclude that multiple punishment was intended.[6]

A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature. Our criminal statutes often build upon one another. Where one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes. The Legislature has taken conduct from the base statute, decided that aggravating conduct

---

[6] Our larceny statutes highlight a problem of the *Blockburger* test when applied in the abstract. Larceny in a building requires the crime to occur in a building, which is not required for larceny over $100. Larceny over $100 requires that over $100 be taken, which is not required by larceny in a building. Even though these two statutes are aimed at violations of the same social norm—the same harm— they are presumptively separate under *Blockburger.* The *Blockburger* test fails to recognize that the Legislature does not always create crimes in neat packages which are susceptible to a pure greater and lesser included offense analysis.

deserves additional punishment, and imposed it accordingly, instead of imposing dual convictions.

We do not intend these principles to be an exclusive list. Whatever sources of legislative intent exist should be considered. If no conclusive evidence of legislative intent can be discerned, the rule of lenity requires the conclusion that separate punishments were not intended.[7]

As evidenced by the divisions in the United States Supreme Court in *Whalen* and in this Court in *Wayne County Prosecutor,* legislatively linked compound and predicate crimes are not subject to an easy analysis. Without a doubt, sexual penetration, regardless of the circumstances, involves social norms distinct from those norms violated by the predicate felony, in these cases, robbery or kidnapping. Yet, because the compound crime of first-degree criminal sexual conduct incorporates all the elements of the predicate felony, it cannot be concluded that the compound and predicate felonies are entirely distinct. The focus of first-degree criminal sexual conduct, however, is clearly on penetration. Cf. *People v Willie Johnson,* 406 Mich 320; 279 NW2d 534 (1979). The common element of the many ways to establish first-degree criminal sexual conduct is penetration. Although not conclusive, that suggests a legislative intent that first-degree criminal sexual conduct and the underlying predicate felony were to be separately punished.

First-degree criminal sexual conduct carries a maximum penalty of life imprisonment. The predicate crimes in the instant cases also carry maxi-

[7] It is doubtful that application of these principles in prior double jeopardy decisions of this Court would yield different results. We do not set down these principles today to necessarily change prior law, but, instead, to establish a coherent means of analysis that can be applied in all cases.

mum penalties of life imprisonment. This very strongly suggests that the Legislature intended that the compound crime of first-degree criminal sexual conduct and the predicate crimes of robbery and kidnapping be separately punished.[8]

1974 PA 266, which created the crime of criminal sexual conduct, was a radical restructuring of the rape laws. Convictions were made more easily obtainable and punishments increased. See Boyle, *The Criminal Sexual Conduct Act,* 43 Det Lawyer 6 (Oct, 1975). Unlike robbery and armed robbery, where robbery is subsumed in armed robbery and a greater punishment is imposed, first-degree criminal sexual conduct and those predicate crimes which normally occur along with first-degree criminal sexual conduct, including armed robbery and kidnapping, have equal punishments. If the predicate crime is considered subsumed, there is no greater punishment. To suggest that the Legislature intended first-degree criminal sexual conduct to subsume a co-equal felony would be to attribute to the Legislature a total lack of purpose. It is only when a conviction is allowed of both the predicate felony and of first-degree criminal sexual conduct

[8] And first-degree criminal sexual conduct under MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) is not simply an aggravation of third-degree criminal sexual conduct. Absent an "other felony" the only element of first-degree criminal sexual conduct under MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) is penetration, which is not a crime under MCL 750.520d; MSA 28.788(4).

This analysis is consistent with the result reached in *People v Wilder,* prohibiting dual convictions of first-degree felony murder and the predicate felony. Since felony murder is punishable by a mandatory life sentence, while the predicate felonies are punishable by no more than a term of years up to life, it may be inferred that the Legislature intended to punish a defendant only once for committing both crimes. While someone in the process of committing a predicate felony has a real disincentive to commit murder (mandatory life) even absent the threat of dual convictions, the same person, assuming the predicate felony carries an up-to-life maximum penalty, would have no such disincentive to commit criminal sexual conduct *unless* dual convictions are imposed.

that there is any purpose in having the crime of penetration under circumstances involving any other felony.

If we were to conclude that only one conviction could result from fact situations such as the cases at bar, the result would be that the defendants, having completed the predicate felonies of kidnapping and robbery, could then embark on one of the most heinous crimes possible, with no risk either of a second conviction or a statutorily increased maximum sentence. We would not lightly attribute such an unthinking and callous attitude to the Legislature in its adoption of the compound felony of first-degree criminal sexual conduct. The contrary conclusion unmistakably comes forth. The Legislature intended that the crimes of first-degree criminal sexual conduct and either robbery or kidnapping be separately punished.

In *Robideau,* the decision of the Court of Appeals is affirmed.[9]

In *Bouknight,* the decision of the Court of Appeals is reversed.

---

[9] Robideau raises four additional claims of error, none of which we find persuasive. Defendant submits that the trial court erred by failing to instruct the jury *sua sponte* on the factual assertions which constituted his theory of the case and that reversal is required. Absent a request, there is no such duty. GCR 1963, 516.7, 785.1.

We also disagree with defendant's claim that the physician who examined the victim after the crime was a res gestae witness. Although an examining physician could be a res gestae witness in a particular case, here the penetration alleged in the criminal sexual conduct count was fellatio. The victim testified that she had not been harmed physically and that the defendant did not ejaculate. In these circumstances, we fail to see how the physician could be an eyewitness to some event in the continuum of a criminal transaction * * * whose testimony [would] aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense". *People v Hadley,* 67 Mich App 688, 690; 242 NW2d 32 (1976). As to defendant's remaining claims of error, that the trial court erred in failing to define the word "fellatio" when instructing the jury and that defense counsel was ineffective under the standard of *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), we find them to be without merit for the reasons stated by the Court of Appeals. 94 Mich App 668-669, 671-672.

In *Griffin,* defendant's convictions must be reversed because the trial court failed to instruct the jury in accordance with the dictates of *People v Barker,* 411 Mich 291; 307 NW2d 61 (1981). The cause is remanded to the circuit court for further proceedings consistent with this opinion.

In *Brown,* the decision of the Court of Appeals is affirmed, the directions to the circuit court on remand are vacated, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.


WILLIAMS, C.J., and RYAN and BOYLE, JJ., concurred with BRICKLEY, J.


LEVIN, J. *(separate opinion).* The defendants were convicted of criminal sexual conduct in the first degree[1] on evidence of sexual penetration in circumstances involving the commission of another felony—armed robbery in the cases of Robideau and Bouknight, and kidnapping in the cases of Griffin and Brown.

Griffin's appeal should not be decided at this time because the issue presented by his motion for a directed verdict of acquittal on the kidnapping charge is implicated in *People v Wesley,*

---

[1] The statute provides:

"A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

\* \* \*

"(c) Sexual penetration occurs under circumstances involving the commission of any other felony.

\* \* \*

"(e) The actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon." MCL 750.520b; MSA 28.788(2).

argued May 4, 1983, which will be decided at an early date.[2]

## I

In each of these consolidated cases, the defendants committed an aggravated theft or kidnapping and a sexual assault, thus violating two societal norms.[3] The Double Jeopardy Clause is not violated by their *convictions* of a theft or kidnapping offense and a criminal sexual conduct offense.

## II

While the Legislature may define an offense as including elements of another offense, the question whether offenses are the "same" within the meaning of the Double Jeopardy Clause presents an issue of constitutional construction to be decided by the Court.[4] Punishing the offender beyond the 15-year maximum for criminal sexual conduct in the third degree[5] because the sexual assault was committed in circumstances involving the commission of another felony and additionally punishing him for that felony *punishes* him twice for the same felony.[6]

---

[2] Leave granted 414 Mich 864 (1982), decided December 28, 1984, 421 Mich 375; 365 NW2d 692.

[3] The use of a gun violated a third societal norm resulting in convictions in *Robideau* and *Bouknight* of felony-firearm.

[4] While the judicial effort to construe the term "same offense" has shown that the constructional issues are difficult, that does not relieve the courts of the obligation to construe the term. Courts have encountered problems in defining what constitutes due process, equal protection of the laws, impairment of the obligation of contract, unreasonable search and seizure, establishment of religion, freedom of speech, and takings, to name but a few of the topics that have occupied the attention of the courts for over 200 years. The judicial response has been to address the difficult question, albeit prior efforts may have failed and the precedents be unclear.

[5] MCL 750.520d; MSA 28.788(4).

[6] In the instant cases, the maximum sentence for CSC 3 would be

When multiple CSC 1—robbery/kidnapping convictions become final, a defendant is entitled, by virtue of the Double Jeopardy Clause, to have the judgment entered against him amended so that he is not punished twice for the same offense. The prosecutors in the instant cases should now be put to an election[7] whether the sentence imposed for CSC 1 should be reduced to the maximum sentence for CSC 3, with no change in the sentence for the predicate robbery or kidnapping conviction, or whether, alternatively, to eliminate the sentence for the predicate robbery or kidnapping conviction with no change in the sentence imposed for CSC 1 and with no change in sentences for non-predicate armed robbery or kidnapping counts.

Robideau was sentenced to concurrent terms of 26-1/2 to 40 years for convictions on two counts of armed robbery (one, the predicate felony) and 20 to 35 years for CSC 1 and a consecutive 2-year term for felony-firearm.

Bouknight was sentenced to concurrent terms of 8 to 30 years for CSC 1 and for convictions on two counts of armed robbery (one, the predicate felony) and a consecutive 2-year term for felony-firearm.

Brown was sentenced to concurrent terms of 20 to 40 years for kidnapping (the predicate felony) and two counts of CSC 1, one based on the kidnapping conviction and the other on being armed with a weapon.

15 years but for the aggravation of the degree of the offense to CSC 1 on the basis of the finding that the sexual assault occurred during the commission of a robbery or kidnapping or, in *Brown,* a kidnapping and on being armed with a weapon.

[7] The prosecutor should not be put to such an election until after the convictions become final because on appeal the CSC 1 conviction might be found defective and be reversed with an order for a new trial and the predicate felony conviction be affirmed.

Griffin was sentenced to concurrent sentences of 15 to 25 years for kidnapping and CSC 1.

Thus, if the prosecutor were required to elect and were to elect in *Robideau* to eliminate the sentence on the predicate armed robbery conviction, Robideau would be required to serve 26-1/2 to 40 years for the non-predicate armed robbery conviction and, concurrently, 20 to 35 years for CSC 1 and a 2-year consecutive sentence for felony-firearm. A similar election in *Bouknight* would require Bouknight to serve 8 to 30 years for the non-predicate armed robbery conviction and, concurrently, 8 to 30 years for CSC 1 and the 2-year consecutive term for felony-firearm. In *Brown,* if the sentence for the CSC 1 conviction based on a predicate felony were reduced to the maximum sentence for CSC 3, Brown would still be required to serve 20 to 40 years for kidnapping and, concurrently, 20 to 40 years for the CSC 1 conviction based on being armed with a weapon. In *Griffin,* however, the prosecutor would be put to an election between the 15- to 25-year sentence for kidnapping and a reduction of the sentence for the sexual assault to the maximum for CSC 3 or alternatively 15 to 25 years for CSC 1 and elimination of the kidnapping sentence.

In all events, the defendants would, as a practical matter, serve exactly the same number of days in prison and have exactly the same number of felony convictions.[8]

## III

Less than two years ago, in *People v Carter,* 415

---

[8] That a sentence in excess of the maximum for CSC 3 based on a predicate felony and a separate sentence for the predicate felony constitute double punishment for the same offense would, I think, be more apparent if the sentences were consecutive.

One can, of course, argue that concurrent sentences do not constitute double punishment, but that would be a new analysis not adopted by this Court or the United States Supreme Court.

Mich 558, 582; 330 NW2d 314 (1982), this Court, on review of its earlier multiple punishment decisions in *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976), *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977), *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980), and *People v Wilder,* 411 Mich 328; 308 NW2d 112 (1981), stated that Michigan's Double Jeopardy Clause offers "broader double jeopardy protection than do the federal standards. * * * However, in Michigan the emphasis is not on the theoretical elements of the crimes involved, but rather upon the proof of facts adduced at trial".[9]

The Court today "disavows" its earlier decisions to the extent that they depart from the United States Supreme Court's latest pronouncement in *Missouri v Hunter,* 459 US 359; 103 S Ct 673; 74 L Ed 2d 535 (1983), which is without decisional support in that Court's earlier decisions and is based solely on dictum.[10]

This Court's new test launches the trial courts, the Court of Appeals, and this Court on an elusive search for clear or conclusive evidence of legislative intent. In finding such evidence in the instant cases, the majority states that the circumstance

---

[9] Applying that test, the Court concluded that the crimes of aiding and abetting the commission of extortion and conspiracy to commit extortion were factually and theoretically independent, and that they were neither inseparably intertwined nor merely alternative routes for creating liability for the substantive crime. *People v Carter, supra,* pp 588-589.

[10] In *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), as in *Missouri v Hunter,* the Legislature indisputably intended separate consecutive punishment and there was no disagreement that, consistent with the Double Jeopardy Clause, it could do so. The question in *Wayne County Prosecutor* was not whether the Legislature could constitutionally impose duplicative punishment for violating the same societal norm, the question here presented, but whether it had chosen constitutional means of providing for separate punishment for violating a different societal norm.

that the predicate crimes of armed robbery and kidnapping carry maximum penalties of life in prison, as does CSC 1, "very strongly suggests" that the Legislature intended separate punishments for CSC 1 and those predicate crimes. This ignores that the predicate felony might be a 2-, 4-, 10- or 15-year felony and that it is unlikely the Legislature intended separate punishment in respect to some predicate felonies and not others and suggests the absence of clear or conclusive evidence of legislative intent to provide for cumulative or separate sentencing.

KAVANAGH, J. *(dissenting)*. These cases present the question of the extent of the protection against multiple punishment afforded by the Double Jeopardy Clause[1] to a person convicted of both a crime which includes an underlying felony among its elements and of the same underlying felony.

I would hold that conviction of both the greater crime and of the same felony upon which proof of the greater crime depends contravenes the guarantee against being twice placed in jeopardy for the same offense.

## I

Each defendant in these cases was convicted of criminal sexual conduct in the first degree involving the commission of another felony.[2] The prose-

_____

[1] "No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15.

[2] MCL 750.520b(1)(c); MSA 28.788(2)(1)(c), which provides:

"A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

* * *

"(c) Sexual penetration occurs under circumstances involving the commission of any other felony."

cution must, to establish the offense, prove sexual penetration and its occurrence under circumstances involving the commission of "any other felony". Contemporaneous with his conviction of first-degree criminal sexual conduct, each defendant was also convicted, in a separate count, of the felony which supplied the "any other felony" element of the greater crime of first-degree criminal sexual conduct. Defendants contend that convictions of both crimes violate their right to be free from double jeopardy.

Herbert Robideau was convicted at one trial of two counts of armed robbery, MCL 750.529; MSA 28.797, possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and first-degree criminal sexual conduct. One of the counts of armed robbery also served as the "other felony" to make the criminal sexual conduct first-degree. Freddy Lee Brown was convicted in one trial of two counts of first-degree criminal sexual conduct and one of kidnapping, MCL 750.349; MSA 28.581. The prosecutor concedes that the kidnapping count "concerns the same abduction as that alleged" in the count for criminal sexual conduct. In addition to his conviction of kidnapping, Randall Dale Griffin was convicted of criminal sexual conduct in the first degree. Once again, the same kidnapping of which he was separately convicted served to prove the "other felony" element of first-degree criminal sexual conduct. Chester Bouknight was convicted of two counts of armed robbery, one count of felony-firearm, and one count of criminal sexual conduct in the first degree. One of the armed robbery counts supplied the "other felony" element of criminal sexual conduct in the first degree.

The Court of Appeals in the cases of *People v*

*Bouknight,* 106 Mich App 798; 308 NW2d 703 (1981), and *People v Brown,* 105 Mich App 58; 306 NW2d 392 (1981), held that separate convictions of the greater crime and its underlying felony were barred by the Double Jeopardy Clause. The two panels concluded that the offenses were the same because it was necessary for the prosecution to prove the elements of the underlying felony to prove first-degree criminal sexual conduct. Both panels were unable to find a clear expression of legislative intent to separately punish, and thus distinguished our opinion in *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979). Another panel of the Court of Appeals concluded in *People v Robideau,* 94 Mich App 663; 289 NW2d 846 (1980), that the two offenses were not the same because any proper felony would have sufficed to prove first-degree criminal sexual conduct. The panel was persuaded, in any event, that the Legislature clearly expressed an intent to authorize multiple convictions. In the unpublished opinion of *People v Griffin,* the Court of Appeals dismissed defendant's double jeopardy claim without discussion.

## II

The constitution provides that "No person shall be subject for the same offense to be twice put in jeopardy". Const 1963, art 1, § 15. This guarantees that a person shall not be twice put in jeopardy for the same offense, either at successive trials, see *People v Cox,* 107 Mich 435; 65 NW 283 (1895), or at one trial, see *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976). To be placed in jeopardy is to be placed in danger of conviction. Black's Law Dictionary (5th ed), p 749. Whether two offenses are the same is a question determined by compar-

ing the elements of the offenses and the evidence used to prove their violation.

In these cases, defendants contend that convictions of first-degree criminal sexual conduct and of the underlying felony constituted double jeopardy. They also argue that the Legislature has not clearly expressed an intent to authorize such multiple convictions under these offenses.

The people, on the other hand, maintain that the Legislature, in enacting the first-degree criminal sexual conduct statute, did intend convictions of both the greater crime and the underlying felony. This legislative intent to separately punish, the people argue, is dispositive of defendants' double jeopardy claims.

The people assert that the Double Jeopardy Clause restrains courts and prosecutors, but does not restrain the Legislature. The reach of the constitutional guarantee is said to be co-extensive with the intent of the Legislature, because the Legislature possesses the authority to define criminal offenses. Hence, they conclude, whether these defendants may be simultaneously prosecuted under these statutes depends on whether the Legislature intended them to be.

Historically, double jeopardy presented itself in the form of successive trials, largely because of the prevailing criminal procedure of the time. Note, *Twice in Jeopardy,* 75 Yale L J 262, 266, fn 13 (1965). The early principle of the English common law served to protect against repeated prosecutions. Once acquitted or convicted, the defendant was freed of the great power of the state. He could not be subjected to it again for the same offense. The problem of multiple prosecutions at one trial is a contemporary one arising from the proliferation of criminal statutes adopted by legislatures.

Particular conduct may violate several statutes, giving prosecutors the option of several charges.[3]

Recognizing that multiple charges simultaneously prosecuted also may put a defendant in jeopardy for the same offense, the Court has enforced the substantive meaning of the clause over its historical form. Thus, in *Martin, supra,* we held that convictions obtained in one trial of possession of heroin and delivery of the same heroin contravened the constitutional guarantee. "Defendant may not be 'doubly punished' by convicting him of possession, which in this case was a necessary incident to the very delivery for which he was also convicted." *Martin,* p 309. See also *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977).

In determining the reach of the Double Jeopardy Clause, the differences between simultaneous multiple prosecutions and successive prosecutions are not of major significance. The underlying principle of the guarantee is *"nemo debet bis puniri pro uno delicto",* that no person ought to be punished twice for one offense. This notion, which can be traced to Roman law,[4] is implicated in either context. A defendant who is successively or simultaneously tried, is twice put in jeopardy for one wrong if the offenses of which he may be convicted are the same.

Neither precedent nor reason supports the people's contention that the Legislature is not restrained by the Double Jeopardy Clause. Such

[3] "The problem of multiple criminal accusations, as an aspect of double jeopardy, is more one of our own day, when assemblies, not monarchs, are in power. * * * Protection of the accused became even more significant when the number of crimes and the severity of the punishments were increased." Sigler, *A History of Double Jeopardy,* 7 Am J of Legal His 283, 289 (1963).

[4] Sigler, fn 3 *supra,* p 283.

circular reasoning requires a unique construction of an instrument which limits the government in all of its branches. It would surely render the clause nugatory, for if legislative intent is the governing principle, that would render the courts and prosecutors impotent to effect the protection.

More importantly, however, the people's argument ignores the evil of double jeopardy—that of punishing more than once for one wrong. The people ignore the historical shift in power from kings to legislators and the state of modern criminal procedure. See Sigler, *A History of Double Jeopardy,* 7 Am J of Legal His 283 (1963). "Multiple prosecutions do engender double jeopardy concerns that are not present in single prosecutions. * * * But protection from multiple *punishment* for the same offense lies at the core of the Double Jeopardy Clause, and this protection is as applicable to single prosecutions as to two." *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374, 410; 280 NW2d 793 (1979) (KAVANAGH, J., *dissenting).*

The Legislature is free to define offenses. The beginning point of judicial resolution of whether two offenses are the same is the Legislature's definition of an offense. Legislative authority to define offenses, however, does not mean that it may subject a defendant to jeopardy under two offenses which are the same. Nor does it mean that legislative intent to separately punish may turn what is, in legal effect, one offense into two.

Legislative intent is informative, but not dispositive, of the question whether a defendant may be simultaneously charged with two offenses. The vital inquiry is whether the offenses are the same. If as between two offenses, however, the Legislature intended prosecution under only one of them,

that should dispose of a double jeopardy claim. But if the intent is not clear or if the Legislature intended separate punishments, a court must examine the offenses for identity.

In sum, although the legislative power is broad it cannot make a circle square by definition. Neither can it make the same offense two different crimes under the Michigan Constitution.

### III

The people contend that the first-degree criminal sexual conduct statute reflects a legislative intent to punish for both the greater crime and the underlying felony.

We must decide whether conviction of the greater offense of first-degree criminal sexual conduct and conviction of the underlying felony constitute impermissible multiple punishment.

In *People v Wilder,* 411 Mich 328, 342; 308 NW2d 112 (1981), we reviewed convictions of first-degree felony murder committed in the perpetration or attempted perpetration of a robbery and of the underlying offense of robbery. The two convictions and sentences could not stand together, we concluded, because "the evidence needed to prove first-degree felony murder requires proof of the underlying lesser included felony", and so they are the same offense under the Double Jeopardy Clause.

First-degree criminal sexual conduct involving another felony requires proof of the underlying felony as a necessary element. The fact that any felony suffices does not mean that the felony alleged is not a lesser included offense. See *Wilder,* p 345. "[T]he question is not whether the challenged lesser offense is by definition necessarily included

within the greater offense also charged, but whether, on the facts of the case at issue, it is." *People v Jankowski,* 408 Mich 79, 91; 289 NW2d 674 (1980).

In the cases presently before the Court, the defendants were convicted of first-degree criminal sexual conduct involving another felony and of the very same underlying felony. To this extent they were twice placed in jeopardy for the same offense, contrary to Const 1963, art 1, § 15.

Defendants' separate convictions of the underlying felonies should be vacated.

In *Robideau,* I would reverse the Court of Appeals decision in part and vacate one of the convictions of armed robbery. As for defendant's other claims of error, I am not persuaded to disturb the rulings of the Court of Appeals.

In *Brown,* the Court of Appeals found error requiring reversal in one of Brown's convictions of first-degree criminal sexual conduct. I would affirm the Court of Appeals decision that if retried for first-degree criminal sexual conduct, the defendant may not be separately convicted of the underlying felony of kidnapping.

In *Griffin,* appellant's convictions of both first-degree criminal sexual conduct and of the underlying felony of kidnapping must be reversed. The trial court's instructions that the asportation was sufficient if it was either for the purpose of abduction or forcible sexual assault fail to conform to *People v Barker,* 411 Mich 291; 307 NW2d 61 (1981). On remand, defendant should not be separately convicted of first-degree criminal sexual conduct and of kidnapping.

The holding of the Court of Appeals in *Bouknight* should be affirmed insofar as it vacates one of Bouknight's convictions of armed robbery.

Cavanagh, J. (dissenting in People v Brown only). In these cases, we are asked to determine whether convictions of first-degree criminal sexual conduct based on sexual penetration under circumstances involving any "other felony", pursuant to MCL 750.520b(1)(c); MSA 28.788(2)(1)(c),[1] and of the "other felony" violate either the federal[2] or state[3] constitutional prohibitions against double jeopardy. I agree with my brother Kavanagh that such multiple convictions do abridge the state constitutional guarantee.

On the same day that it held the Double Jeopardy Clause of the Fifth Amendment applicable to the states, Benton v Maryland, 395 US 784, 793-796; 89 S Ct 2056; 23 L Ed 2d 707 (1969), the United States Supreme Court summarized the protections afforded by that clause:

"It protects against a second prosecution for the same offense after acquittal. It protects against a second

---

[1] MCL 750.520b(1); MSA 28.788(2)(1) provides as follows:

"Sec. 520b. (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

\* \* \*

"(c) Sexual penetration occurs under circumstances involving the commission of any other felony."

[2] "No person shall be held to answer to a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." US Const, Am V (emphasis added).

The double jeopardy provision of the Fifth Amendment is applicable to the states through the Fourteenth Amendment. See Benton v Maryland, 395 US 784, 793-796; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

[3] Const 1963, art 1, § 15 provides in pertinent part as follows:

"No person shall be subject for the same offense to be twice put in jeopardy."

prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

Those same protections were also known at common law. *Bartkus v Illinois (On Rehearing),* 359 US 121, 151-155; 79 S Ct 676; 3 L Ed 2d 684 (1959) (Black J., *dissenting), reh den* 360 US 907; 79 S Ct 1283; 3 L Ed 2d 1258 (1959); *Ex parte Lange,* 85 US (18 Wall) 163, 168-175; 21 L Ed 872 (1874).

Undoubtedly, these cases before us deal with the third protection, that against multiple punishments for the same offense.[4]

"Under such circumstances the Double Jeopardy Clause operates to protect the defendant from receiving double punishment for what is in reality a single criminal offense. *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980).

"The problem in multiple punishment cases, as in multiple prosecution cases, is to determine whether the charges at issue constitute the 'same offense' for double jeopardy purposes." *People v Carter,* 415 Mich 558, 577-578; 330 NW2d 314 (1982).

As the majority's thorough review of federal and state case law reveals, the scope of what appears to be a seemingly clear and simple principle proscribing multiple punishments for the same offense is currently unsettled and unclear. Nevertheless, our task remains the same. We must determine

---

[4] Although the right to be free from multiple punishments for the same offense might be better analyzed as a right inherent in due process, US Const, Am XIV; Const 1963, art 1, § 17, or as a portion of the right to be free from cruel or unusual punishment, US Const, Am VIII; Const 1963, art 1, § 16, or even as one of the non-enumerated individual rights, US Const, Am IX; Const 1963, art 1, § 23, see, generally, Westen & Drubel, *Toward a General Theory of Double Jeopardy,* 1978 Supreme Court Review 81, it is not necessary to alter the traditional analytic framework.

the meaning of the constitutional prohibitions
against double jeopardy; specifically, the proscription against multiple punishments for the same
offense. In so doing, it serves us well to recall the
following observations made over 100 years ago:

"If there is anything settled in the jurisprudence of
England and America, it is that no man can be twice
lawfully punished for the same offense. And though
there have been nice questions in the application of this
rule to cases in which the act charged was such as to
come within the definition of more than one statutory
offense, or to bring the party within the jurisdiction of
more than one court, there has never been any doubt of
its entire and complete protection of the party when a
second punishment is proposed in the same court, on
the same facts, for the same statutory offense.

* * *

"It is very clearly the spirit of the instrument [i.e.,
the constitution] to prevent a second punishment under
judicial proceedings for the same crime, so far as the
common law gave that protection.

* * *

"For of what avail is the constitutional protection
against more than one trial if there can be any number
of sentences pronounced on the same verdict? Why is it
that, having once been tried and found guilty, he can
never be tried again for that offense? Manifestly it is
not the danger of jeopardy of being a second time found
guilty. It is the punishment that would legally follow
the second conviction which is the real danger guarded
against by the Constitution. But if, after judgment has
been rendered on the conviction, and the sentence of
that judgment executed on the criminal, he can be
again sentenced on that conviction to another and
different punishment, or to endure the same punishment a second time, is the constitutional restriction of
any value? Is not its intent and its spirit in such a case
as much violated as if a new trial had been had and, on
a second conviction, a second punishment inflicted?

"The argument seems to us irresistible, and we do not

doubt that *the Constitution was designed as much to
prevent the criminal from being twice punished for the
same offense as from being twice tried for it."* (Empha-
sis added.) *Lange, supra,* pp 168, 170, 173.

The foregoing observations have retained their
vitality to this day and are true of the meaning of
Const 1963, art 1, § 15.[5] See, *e.g., People v Wilder,*
411 Mich 328, 350; 308 NW2d 112 (1981), *reh den*
411 Mich 1157 (1981).

In my view, the double jeopardy protection
against multiple punishments for the same offense
encompasses the cases now before us.[6] Indeed, in
situations like these and like those present in
*Wilder, supra,* the underlying or predicate offense
is always included within the greater or compound
offense which relies on it for a conviction.[7] To

[5] Although the present language of our constitutional prohibition
against double jeopardy is almost identical to that found in the
federal constitution (but *cf.* Const 1908, art 2, § 14; Const 1850, art 6,
§ 29; Const 1835, art 1, § 12), this Court has never stated that our
current provision merely mirrors the federal protections. Rather, we
have found that our constitutional prohibition against double jeop-
ardy affords greater protection than does the Fifth Amendment as
applied to the states through the Fourteenth. See, *e.g., People v
Wakeford,* 418 Mich 95, 105-106, fn 9; 341 NW2d 68 (1983); *People v
Carter,* 415 Mich 558, 582-584; 330 NW2d 314 (1982); *People v Wilder,*
411 Mich 328, 343-349; 308 NW2d 112 (1981), *reh den* 411 Mich 1157
(1981); *People v Jankowski,* 408 Mich 79, 91-92, 96; 289 NW2d 674
(1980); *People v White,* 390 Mich 245; 212 NW2d 222 (1973). Of
course, our reliance on the state constitution has been due in part to
the United States Supreme Court's failure to clearly define the scope
of the Fifth Amendment double jeopardy protections.

[6] Since the scope of the corresponding Fifth Amendment double
jeopardy protection is unclear, this discussion rests on the interpreta-
tion of Const 1963, art 1, § 15.

[7] Whether that is "legally" or "factually" so is unimportant to our
analysis. See *Wilder, supra,* pp 345-347. Indeed, by necessary implica-
tion, a compound offense which has as an element other enumerated
offenses, *e.g.,* felony murder, MCL 750.316; MSA 28.548, or any other
offense, *e.g.,* first-degree criminal sexual conduct, MCL 750.520b(1)(c);
MSA 28.788(2)(1)(c), includes in that element, in the alternative, all of
the elements of each enumerated offense or of all other offenses, *i.e.,*
the predicate offenses are "legally" or necessarily lesser included
offenses. Of course, even if predicate offenses are not necessarily

paraphrase *Carter, supra,* pp 588-589, these offenses are not factually and theoretically independent; rather, they are inseparably intertwined. Each offense necessarily supplies an indispensable element of the other. Thus, to impose punishments for both offenses amounts to constitutionally impermissible multiple punishments for the same offense.

To so hold is not a startling departure from prior law. Rather, it is not a departure at all, but is derived logically from and based on our prior decisions. See *Carter, supra,* pp 577-589; *Wilder, supra,* pp 341-352; *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374, 405-412; 280 NW2d 793 (1979) (KAVANAGH, J., *dissenting), reh den* 406 Mich 1127 (1979), *app dis sub nom Brintley v Michigan,* 444 US 948; 100 S Ct 418; 62 L Ed 2d 317 (1979); *People v Jankowski,* 408 Mich 79, 85-93; 289 NW2d 674 (1980); *People v Stewart (On Rehearing),* 400 Mich 540, 548-549; 256 NW2d 31 (1977); *People v Martin,* 398 Mich 303, 307-310; 247 NW2d 303 (1976); *People v Cook,* 236 Mich 333, 335-338; 210 NW 296 (1926). Accordingly, since we are interpreting Const 1963, art 1, § 15, I would reaffirm the test set forth in those cases which courts in this state are to employ when determining whether two offenses are the same offense for double jeopardy purposes, *i.e.,* if one offense is a necessarily or cognate lesser included offense of another, they are the same offense for purposes of the state constitutional prohibition against double jeopardy.[8]

included in the compound offense, the proof needed to establish the compound offense will always require proof of a predicate offense, *i.e.,* the predicate offenses are "factually" or cognate lesser included offenses.

[8] Since the United States Supreme Court has not enunciated a constitutionally based test for use when analyzing Fifth Amendment double jeopardy issues, see *Missouri v Hunter,* 459 US 359; 103 S Ct

I am cognizant of the oft-stated maxim that the legislative body has the exclusive power to define offenses and fix punishments. See, *e.g., Wayne County Prosecutor, supra,* pp 391-392; *People v Wakeford,* 418 Mich 95, 108, 111; 341 NW2d 68 (1983). Nevertheless, that power does not in any way exempt the legislative body from honoring the state constitutional prohibition against double jeopardy to the same extent as must the other coequal branches of government, *i.e.,* it is bound to honor *all* the protections afforded by that constitutional guarantee.[9] Indeed, the words contained in the constitution do not limit their application to any particular branch or branches:

673; 74 L Ed 2d 535 (1983); *Albernaz v United States,* 450 US 333, 340-342; 101 S Ct 1137; 67 L Ed 2d 275 (1981); *Whalen v United States,* 445 US 684, 691-692; 100 S Ct 1432; 63 L Ed 2d 715 (1980), we are free to adopt our own test when reviewing such claims. In addition, the federal constitution does not prevent us from creating a different test when interpreting the double jeopardy guarantee of our own constitution, nor does it prevent the state constitutional prohibition against double jeopardy from affording greater protection than does the Fifth Amendment prohibition.

[9] Of course, theoretically, the legislative body can never abridge the state constitutional double jeopardy protections, *i.e.,* the mere enactment of statutes which purport to authorize violations of those protections do not in fact amount to such violations. Rather, those protections are not violated until a prosecutor institutes a subsequent prosecution for the same offense after a prior conviction or acquittal or until a court imposes a second sentence for the same offense. Hence, the following observations by the United States Supreme Court:

"[T]he Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." *Brown v Ohio,* 432 US 161, 165; 97 S Ct 2221; 53 L Ed 2d 187 (1977). Cf. *Hunter, supra; Albernaz, supra,* pp 334-344; *Whalen, supra,* pp 688-695.

Nevertheless, statutes which purport to authorize violations of any of the protections afforded by the state constitutional prohibition against double jeopardy will be construed so that such violations will not occur or will be declared unconstitutional.

"No person shall be subject for the same offense to be twice put in jeopardy."

To hold otherwise would constitute an improper use of judicial power, creating something out of nothing, finding a limitation which has no basis in fact, law, or logic, making law by judicial *fiat.*

"If the Double Jeopardy Clause imposed no restrictions on a legislature's power to authorize multiple punishment, there would be no limit to the number of convictions that a State could obtain on the basis of the same act, state of mind, and result. A State would be free to create substantively identical crimes differing only in name, or to create a series of greater and lesser-included offenses, with the first crime a lesser-included offense of the second, the second a lesser-included offense of the third, and so on.

                    *   *   *

"In light of these considerations, the Double Jeopardy Clause cannot reasonably be interpreted to leave legislatures completely free to subject a defendant to the risk of multiple punishment on the basis of a single criminal transaction. In the context of multiple prosecutions, it is well established that the phrase 'the same offence' in the Double Jeopardy Clause has independent content—that two crimes that do not satisfy the *Block-burger* test constitute 'the same offence' under the Double Jeopardy Clause regardless of the legislature's intent to treat them as separate offenses. Otherwise multiple prosecutions would be permissible whenever authorized by the legislature. The Court has long assumed that the *Blockburger* test is also a rule of constitutional stature in multiple punishment cases, and I would not hesitate to hold that it is. If the prohibition against being 'twice put in jeopardy' for 'the same offence' is to provide meaningful protection, the phrase 'the same offence' must have content independent of state law in both multiple prosecution and multiple punishment cases. Since the Double Jeopardy Clause limits the power of all branches of government, including the legislature, there is no more reason to treat the test as simply a rule of statutory construction in multi-

ple punishment cases than there would be in multiple prosecution cases." *Missouri v Hunter*, 459 US 359; 103 S Ct 673; 74 L Ed 2d 535 (1983) (Marshall, J., *dissenting*). Also *Wayne County Prosecutor, supra*, pp 410-411 (KAVANAGH, J., *dissenting*), pp 414-417 (LEVIN, J., *dissenting*).

Such a view does not necessarily prevent multiple punishments for multiple offenses committed in a single transaction. *Cf. Wakeford, supra*, fn 7. Rather, as long as single transaction multiple offenses are legally and factually distinct under the test as previously set forth, the state constitutional prohibition against double jeopardy does not operate as a bar to the imposition of multiple punishments. Only in those infrequent cases where in reality two offenses are the same offense are multiple punishments prohibited.

In any event, these cases do not involve a legislative breach of the state constitutional protection against multiple punishments for the same offense, *i.e.,* the Legislature has not clearly and unequivocally authorized punishment for both first-degree criminal sexual conduct based on sexual penetration under circumstances involving any "other felony" and the "other felony".[10] Rather, these cases involve a judicial breach of that protection,

---

[10] The majority's conclusion to the contrary is premised on specious reasoning. *Ante,* pp 490–491. The observation that armed robbery and kidnapping "normally occur along with first-degree criminal sexual conduct" is improperly speculative. Rather, it is just as likely that the predicate felony will be a breaking and entering or a larceny-related offense. However, those offenses carry maximum punishments of no more than 15 years' imprisonment. Thus, a person can be faced with the risk that a greater punishment will be imposed solely as the result of a conviction pursuant to MCL 750.520b(1)(c); MSA 28.788(2)(1)(c). Accordingly, the majority's reasoning, that the Legislature intended to impose double punishments because the predicate felonies are co-equal offenses, falls by its own weight. The bases advanced by the majority do not persuade me to find a clear expression of legislative intent.

"To the extent that legislative intent is not entirely free of doubt,

*i.e.,* imposition of a second sentence for the same offense.[11]

In summary, I would reaffirm the test set forth in our prior decisions which courts in this state are to employ when determining whether two offenses are the same offense for double jeopardy purposes, *i.e.,* if one offense is a necessarily or cognate lesser included offense of another, it is the same offense for purposes of the state constitutional prohibition against double jeopardy embodied in Const 1963, art 1, § 15. When applying the test to these cases, it is clear that convictions of first-degree criminal sexual conduct based on sexual penetration under circumstances involving any "other felony", pursuant to MCL 750.520b(1)(c); MSA 28.788(2)(1)(c), and of the "other felony" violate the state constitutional prohibition against double jeopardy, specifically, the protection to be free from multiple punishments for the same offense. In these and similar cases, the underlying or predicate offense is always included within the greater or compound offense which relies on it for a conviction. Consequently, imposing punishments for both offenses amounts to constitutionally impermissible multiple punishment for the same offense.

---

the doubt must be resolved in favor of lenity. See *Whalen v United States,* 445 US 684, 694; 100 S Ct 1432; 63 L Ed 2d 714 (1980); *Simpson v United States,* 435 US 6, 14-15; 98 S Ct 909; 55 L Ed 2d 70 (1978); *United States v Bass,* 404 US 336, 347; 92 S Ct 515; 30 L Ed 2d 488 (1971)." *People v Wilder,* 411 Mich 328, 343; 308 NW2d 112 (1981), *reh den* 411 Mich 1157 (1981). Also, *Wilder, supra,* pp 364-365 (RYAN, J., *concurring); People v Carter,* 415 Mich 558, 589, fn 32; 330 NW2d 314 (1982).

[11] Although the state constitutional prohibition against double jeopardy does not prevent a prosecutor from instituting a single prosecution charging a person with both offenses or from obtaining guilty verdicts on both charges in that prosecution, a court may not impose sentences pursuant to both verdicts. However, note that the better course in such cases is for the prosecutor to charge in the alternative. See *Wilder, supra,* pp 352-353; *Jankowski, supra,* pp 92-93.

I would affirm the decision of the Court of Appeals in *Brown* and its directions on remand.

CAVANAGH, J., participated only in the decision of *Brown*.