PEOPLE v SMITH

Docket No. 79745. Submitted April 3, 1986, at Detroit. Decided July 7, 1986. Leave to appeal denied, 426 Mich —.

Jonathon Smith was convicted by a jury in Wayne Circuit Court of assault with intent to rob and steal while armed, assault with intent to do great bodily harm less than murder, and possession of a firearm in the commission of a felony and was sentenced, William J. Giovan, J. Defendant appealed. *Held:*

1. Defendant's convictions for assault with intent to commit great bodily harm less than murder and assault with intent to rob and steal being armed do not violate the prohibition against double jeopardy.

2. The trial court did not abuse its discretion in finding that the prosecution exercised due diligence in attempting to produce a missing res gestae witness.

3. The trial court did not abuse its discretion in refusing to reduce the amount of defendant's bail. The failure to reduce the amount of the bail did not result in a denial of due process.

4. The trial court did not abuse its discretion by admitting opinion testimony of a police officer. The testimony was rationally based on the perception of the police officer and involved a crucial issue.

5. Defendant's prison sentence of from thirty-five to seventy years for the assault with intent to rob conviction is not excessive under the facts of this case.

6. The trial court may have improperly relied on inaccurate information when sentencing defendant. The case is remanded in order for the court to determine whether it relied on the disputed information in sentencing defendant and, if so, to either make a determination as to the accuracy of the informa-

REFERENCES

Am Jur 2d, Criminal Law §§ 20, 277-279, 551, 604.

Am Jur 2d, Witnesses § 2.

Multiple instances of forcible intercourse involving same defendant and same victim as constituting multiple crimes of rape. 81 ALR3d 1228.

Single or separate larceny predicated upon stealing property from different owners at the same time. 37 ALR3d 1407.

tion or to resentence the defendant without taking the disputed information into consideration.

Affirmed, but remanded in part.

1. CRIMINAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENT.

A double jeopardy claim based solely on multiple punishment must be resolved by looking to the legislative intent in enacting the statutes involved; in order to ascertain the legislative intent, a court must consider the type of harm which the Legislature intended to prevent and the amount of punishment authorized by the Legislature.

2. ASSAULT AND BATTERY — ASSAULT WITH INTENT TO DO GREAT BODILY HARM.

The elements of assault with intent to commit great bodily harm are 1) an attempt or offer with force or violence to do corporal harm to another, 2) coupled with an intent to do great bodily harm less than murder (MCL 750.84; MSA 28.279).

3. ASSAULT AND BATTERY — ASSAULT WITH INTENT TO ROB AND STEAL BEING ARMED.

The elements of assault with intent to rob and steal being armed are: 1) an assault with force or violence; 2) an intent to rob and steal; and 3) defendant's being armed (MCL 750.89; MSA 28.284).

4. ASSAULT AND BATTERY — ASSAULT WITH INTENT TO DO GREAT BODILY HARM — ASSAULT WITH INTENT TO ROB AND STEAL BEING ARMED — MULTIPLE PUNISHMENTS.

The vast disparity in punishment authorized by the statutes for assault with intent to do great bodily harm less than murder and assault with intent to rob and steal being armed indicates that the Legislature intended multiple punishments under those statutes based upon a single criminal episode (MCL 750.84, 750.89; MSA 28.279, 28.284).

5. WITNESSES — RES GESTAE WITNESSES — DUE DILIGENCE — APPEAL.

A trial court's finding that a prosecutor exercised due diligence in unsuccessfully attempting to locate and secure the presence of res gestae witnesses will be overturned on appeal only where an abuse of discretion is shown.

6. WITNESSES — RES GESTAE WITNESSES — PROSECUTING ATTORNEYS.

The res gestae rule requires that a prosecutor do everything reasonable to produce a res gestae witness.

7. WITNESSES — LAY WITNESSES — OPINION TESTIMONY — RULES OF EVIDENCE.

Opinion testimony by a lay witness is admissible if it is rationally

based on the perception of the witness and helpful to a clear understanding of his testimony or a fact in issue (MRE 701).

8. Criminal Law — Appeal — Sentencing.

A criminal defendant may request review of the exercise of a trial court's discretion in imposing sentence, but relief will be granted only where it is found that the trial court abused its discretion to the extent that the sentence shocks the conscience of the appellate court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Mardi Crawford*), for defendant on appeal.

Before: Cynar, P.J., and Wahls and E. E. Borradaile,* JJ.

Cynar, P.J. Following a jury trial, defendant was convicted of assault with intent to rob and steal while armed, MCL 750.89; MSA 28.284, assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, and possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to prison terms of from thirty-five to seventy years for the assault with intent to commit robbery conviction, 6½ to ten years for the assault with intent to commit great bodily harm conviction, and two years for the felony-firearm conviction. Defendant appeals as of right.

At approximately midnight on August 2, 1983, Michael Yusko and Ron Hudo were driving south on Woodward Avenue in Highland Park when they were flagged down by a young woman in a

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

graduation gown. The woman got into the car and suggested that they drive down the closest side street. Yusko then parked and got out of the car while Hudo remained inside with the woman.

As Yusko was standing next to the car, he noticed two men walk by. A couple minutes later, they walked by again. This time they approached Yusko and asked him for a light. Yusko stated that he didn't have one and started moving away from the car. One of the men told Yusko not to move and then demanded his money.

Meanwhile, the defendant had approached the car and asked Hudo for a light. After using Hudo's lighter, defendant returned it and Hudo turned to replace it in his pocket. While his head was turned, Hudo heard a pop and felt something hit the side of his head. Hudo testified that he slumped over on the seat and lost consciousness. When he awoke, his money was gone.

Yusko heard two shots and saw Hudo fall to the car seat. He started to run but was quickly caught by defendant and his accomplice. The men demanded all of Yusko's money and Yusko complied. The two men fled when a car turned down the street.

Yusko then ran toward Woodward Avenue where he stopped a police car. He got into the car and the officers drove to the area where the shooting had occurred to find that Hudo and the car were gone. As the police circled the area, Yusko spotted the men who had robbed him. The officers stopped the car and ordered the men to "freeze." Defendant stopped but the other man ran off. The police frisked defendant and found a .22-caliber revolver with two spent cartridges.

As the officers continued their search for the other man, Yusko observed Hudo standing beside his car on Woodward Avenue. The officers took

Hudo to Henry Ford Hospital where he was treated for a single gunshot wound. The shot had entered the right side of Hudo's face about an inch below the eye.

Defendant's version of the events differed markedly from that of Hudo and Yusko. Defendant testified that he was walking to a friend's home when he heard a woman in a car yell, "Please don't let them rob me." A man was standing next to the car and defendant asked him what was happening. In spite of defendant's warning that he had a gun, the man kept approaching him. When he heard the girl yell that the man had a gun, defendant turned and fired at the car. The man standing outside the car turned and fled while the man in the car drove away.

Defendant was charged with armed robbery and assault with intent to murder but was convicted of the lesser-included offenses of assault with intent to commit robbery and assault with intent to do great bodily harm less than murder. Both convictions arose out of the robbery and shooting of the complainant, Hudo. The first issue which defendant raises on appeal is that his convictions violate the prohibition against double jeopardy.

When a defendant's double jeopardy claim is purely one of multiple punishment, his only interest is in not having more punishment imposed than the Legislature intended. *People v Robideau,* 419 Mich 458, 485; 355 NW2d 592 (1984). Accordingly, discerning legislative intent is essential to our determination of defendant's claim. In order to ascertain legislative intent, the Supreme Court in *Robideau* directed our examination to two sources: (1) the type of harm which the Legislature intended to prevent and (2) the amount of punishment authorized by the Legislature. After applying these considerations to the statutes underlying

defendant's convictions, we conclude that the Legislature intended to permit multiple convictions under the two statutes based upon a single criminal transaction.

The two statutes in question are intended to prohibit violations of two distinct social norms. The elements of assault with intent to commit great bodily harm less than murder include an attempt or offer with force or violence to do corporal harm to another coupled with an intent to do great bodily harm less than murder. *People v Leach,* 114 Mich App 732; 319 NW2d 652 (1982), MCL 750.84; MSA 28.279. The elements of assault with intent to rob and steal being armed include: (1) an assault with force or violence; (2) an intent to rob and steal; and (3) defendant's being armed. *People v Federico,* 146 Mich App 776, 790; 381 NW2d 819 (1985).

Although both crimes have an assault element, the intent element is different. Assault with intent to commit great bodily harm requires that at the time of the assault the defendant intended to commit great bodily harm less than murder. No such intent is required for the crime of assault with intent to commit robbery. Furthermore, the presence of the different intent elements indicates that the Legislature intended to prevent distinct types of harm, robbery and corporal harm. See also *People v Leach, supra.*

We also note that the amount of punishment under the two statutes is different. The Legislature has authorized punishment for life or any term of years for the offense of assault with intent to rob, MCL 750.89; MSA 28.284. In contrast, punishment for assault with intent to commit great bodily harm is limited to ten years. MCL 750.84; MSA 28.279. The vast disparity in punishment indicates that the Legislature intended multiple punish-

ments under separate statutes based upon a single criminal enterprise. We conclude that defendant's convictions for assault with intent to commit bodily harm and assault with intent to rob and steal being armed do not violate the prohibition against double jeopardy.

Defendant next maintains that the trial court abused its discretion in finding that the prosecution exercised due diligence in attempting to produce the missing res gestae witness. Both parties agree that the young woman in the car with Hudo was a res gestae witness and that the prosecution had the duty to endorse her on the information and produce her at trial. MCL 767.40; MSA 28.980. The dispute arises over whether the prosecution exercised due diligence in attempting to locate and secure her presence. In order to resolve the question, this Court remanded the case to the trial court for the purpose of conducting a *Pearson* hearing.[1] At the conclusion of the hearing, the trial court found that the prosecution had exercised due diligence. The trial court's finding will be reversed only where an abuse of discretion is shown. *People v Kim,* 124 Mich App 421, 424; 335 NW2d 58 (1983).

At the hearing, the prosecution maintained that the police had attempted to get a description of the woman from the complainants and had requested that complainants examine "mug books" in hopes of finding the woman's picture. No further efforts were made. Generally we would find that the prosecution's failure to take additional measures to secure the presence of the witness would not constitute due diligence. However, we are at a loss as to what further reasonable actions could have been taken in this case.

---

[1] *People v Pearson,* 404 Mich 698; 273 NW2d 856 (1979).

The witness was not known to any of the parties and no one was even able to provide a description beyond the fact that she had been wearing a graduation gown. Moreover, while the police requested that complainants examine "mug books," complainants refused to do so. The res gestae rule requires that the prosecution do everything reasonable to produce the witness. *People v Baskin,* 145 Mich App 526, 535; 378 NW2d 534 (1985). We cannot reasonably expect the police to produce an unknown, unidentified woman in a large metropolitan area. In light of the facts in this case, the trial court did not abuse its discretion in finding that the prosecution exercised due diligence.

Defendant also contends that the court's refusal to lower his bail resulted in a denial of due process by preventing him from preparing a defense. Bond was originally set at $100,000/10 percent and then lowered to $25,000/10 percent. Defendant was unable to meet the reduced bond and filed a motion for further reduction, which was denied. Defendant argues that further reduction was necessary in order for him to search for the missing res gestae witness and thereby prepare his defense.

MCR 6.110(E), formerly GCR 1963, 790.5, lists factors which a court should consider in setting bail and requires the court to state the reasons for its decision on the record. In the instant case, the trial court denied defendant's motion for the following reasons: (1) the nature of the offense; (2) the probability of conviction; and (3) the fact that trial was set for nineteen days from the date of the hearing. In view of these factors, we do not believe that the trial court abused its discretion in refusing to further reduce defendant's bond.

Neither are we persuaded that the failure to reduce bond resulted in a denial of due process. As defendant has stated, fundamental fairness re-

quires "that a criminal defendant be offered every reasonable opportunity to present a defense." *United States v Reese,* 149 US App DC 427, 430; 463 F2d 830, 833 (1972). A "reasonable opportunity" is not every opportunity and does not extend to releasing a defendant when the factors militate in favor of continued pretrial detention.

Defendant next argues that the trial court erroneously admitted the opinion testimony of a police witness. Officer Hartman testified at trial that when he first spotted the defendant and his accomplice they were standing "up against the house . . . trying to conceal themselves from the street or any vehicular traffic." Defense counsel objected to the testimony but was overruled. The court stated that while it was conclusory, it was admissible under MRE 701.

MRE 701 provides that opinion testimony by a lay witness is admissible if it is rationally based on the perception of the witness and helpful to a clear understanding of his testimony or a fact in issue. The admission of opinion testimony is within the trial court's discretion. *People v George Johnson,* 5 Mich App 257; 146 NW2d 107 (1966). Here the opinion testimony was clearly based on the witness's perception and involved a crucial issue, whether defendant was the victim of a crime or a culprit. We do not believe the trial court's discretion was abused.

Defendant's final two claims involve the sentencing. First, he argues that the sentence imposed by the court was excessive. Our review is limited to determining whether the trial court, in imposing the sentence, abused its discretion to the extent that it shocks the appellate conscience. *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983).

As previously indicated, defendant was sen-

tenced to a prison term of from thirty-five to
seventy years for the assault with intent to rob
conviction. The minimum sentence range recom-
mended by the guidelines for this offense was
forty-eight to eighty-four months. The trial court
indicated that the guidelines did not adequately
accommodate the circumstances of the case and
felt that departure was necessary. He referred to
the following factors in support of departure: (1)
the outrageousness of defendant's conduct and the
need to discipline the wrongdoer; (2) defendant's
demonstrated inability to reform; (3) defendant's
prior convictions; (4) the protection of society; and
(5) the need to assuage the legitimate indignation
of the victim and the community. These factors
are more than sufficient to support the court's
deviation from the guidelines and, in light of the
factors enumerated by the court, we do not find
the thirty-five to seventy-year sentence shocking to
our collective conscience.

Finally, defendant argues that at the sentencing
the court improperly relied on allegedly inaccurate
information. In referring to defendant's prior con-
viction for tampering with an auto, the trial court
indicated that the conviction would have sup-
ported a much graver offense. The court described
the circumstances as follows:

> The description of that offense would have dem-
> onstrated that he could have been convicted of
> armed robbery. It also involved the use of a
> weapon.
> The defendant, in fact, having taken the Com-
> plainant captive, ordering him to drive to a desig-
> nated place, and then defendant drove off with the
> motor vehicle. That crime was also committed in
> the company of others.

However, the presentence report also contained

defendant's version of the offense, which conflicted with the account relied upon by the court.

Defendant did not challenge the accuracy of the information at the sentencing but first raised the issue at the hearing on remand. Although the court indicated that the other factors it had articulated were more than adequate to support defendant's sentence, it concluded that a further hearing was necessary to determine the facts underlying defendant's prior conviction. An order to that effect was subsequently entered; however, no additional hearing was held. Because the lower court has indicated the need for a further hearing, we remand this case in order for the court to determine whether it relied on the disputed information in sentencing defendant and, if so, to either make a determination as to its accuracy or to resentence the defendant without taking the disputed information into consideration.

Affirmed but remanded in part. We retain no further jurisdiction.