PEOPLE v SPIVEY

Docket No. 133349. Submitted August 3, 1993, at Lansing. Decided
    December 7, 1993, at 9:15 A.M. Leave to appeal sought.

Mentwell Spivey was convicted by a jury in the Jackson Circuit
    Court, Gordon W. Britten, J., of breaking and entering with
    intent to commit larceny, breaking and entering with intent to
    commit armed robbery, armed robbery, and first-degree crimi-
    nal sexual conduct in connection with a single entry into a
    mobile home. The defendant was subsequently convicted of
    being an habitual offender and was sentenced to imprisonment
    of 15 to 22½ years for each of the breaking and entering
    convictions, 50 to 75 years for the armed robbery conviction,
    and 50 to 75 years for the criminal sexual conduct conviction.
    The defendant appealed, and the prosecution cross appealed.

    The Court of Appeals held:

    1. The prosecutor did not shift the burden of proof onto the
    defendant in commenting at trial about the defendant's failure
    to produce witnesses who could corroborate the alibi he as-
    serted when cross-examined by the prosecutor. A prosecutor is
    permitted to comment regarding a defendant's failure to pro-
    duce corroborating witnesses whenever the defendant takes the
    stand and testifies in his own behalf.

    2. The prosecutor did not engage in improper comment or
    shift the burden of proof in responding to defense counsel's
    remarks about a testifying police officer's failure to indicate
    whether shoe prints found at the crime scene matched the
    defendant's shoes. Error, if any, resulting from the prosecutor's
    comments was harmless in light of the strong evidence against
    the defendant.

    3. The defendant's conviction of both breaking and entering
    with intent to commit larceny and breaking and entering with
    intent to commit armed robbery for a single entry into an
    occupied dwelling violates the double jeopardy protection
    against multiple punishment for the same offense. The break-
    ing and entering statute focuses on the protection of peaceful

REFERENCES

Am Jur 2d, Burglary §§ 41, 42.
See ALR Index under Breaking and Entering.

habitation and draws no distinctions on the basis of whether a breaking and entering is done with the intent to commit larceny or done with the intent to commit any other felony. Accordingly, a single breaking and entering will support only one conviction of breaking and entering. The defendant's conviction of breaking and entering with intent to commit larceny must be vacated.

4. The trial court's failure to instruct the jury about third-degree criminal sexual conduct constituted harmless error under the facts of this case because the jury found aggravating factors that would have precluded a conviction of third-degree criminal sexual conduct.

5. The sentences for the criminal sexual conduct and armed robbery convictions do not violate the principle of proportionality.

6. The prosecution failed to preserve for review the issue whether the evidence supported two convictions of first-degree criminal sexual conduct.

Affirmed in part and reversed in part.

D.C. KOLENDA, J., concurring, stated that the trial court's failure to instruct the jury about third-degree criminal sexual conduct was harmless error only because the verdict of guilty of breaking and entering established that the sexual conduct occurred during the commission of another felony, thereby making the criminal sexual conduct first-degree. The majority's harmful error analysis may lead to overcharging of defendants in other cases.

CRIMINAL LAW — BREAKING AND ENTERING.

The purpose of the statute that proscribes breaking and entering is the protection of peaceful habitation; a single act of breaking and entering will support only one conviction of breaking and entering irrespective of the number of felonies committed after entry (MCL 750.110; MSA 28.305).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Dennis M. Hurst,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Fred E. Bell*), for the defendant on appeal.

Before: MARILYN KELLY, P.J., and REILLY and
D. C. KOLENDA,* JJ.

PER CURIAM. Defendant was convicted after a
jury trial of breaking and entering with the intent
to commit larceny and breaking and entering with
the intent to commit armed robbery, MCL 750.110;
MSA 28.305, armed robbery, MCL 750.529; MSA
28.797, and first-degree criminal sexual conduct,[1]
MCL 750.520b(1)(c), (d), (e), and (f); MSA 28.788(2)
(1)(c), (d), (e), and (f). Defendant was subsequently
convicted as a second-felony habitual offender.
MCL 769.10; MSA 28.1082. He was sentenced to 15
to 22½ years for each of the breaking and enter-
ing convictions, 50 to 75 years for the armed
robbery conviction, and 50 to 75 years for the
criminal sexual conduct conviction. Defendant now
appeals as of right his convictions and sentences.
The prosecution cross appeals. We affirm in part
and reverse in part.

I

Defendant first asserts that certain comments of
the prosecutor served to shift the burden of proof
to defendant. This Court evaluates the prosecutor's
remarks in context to determine whether the de-
fendant was denied a fair and impartial trial.
*People v Lawton*, 196 Mich App 341, 353; 492
NW2d 810 (1992).

On cross-examination, defendant was asked by
the prosecutor whether he was in Jackson, the site
of the offenses, on the night the incidents occurred.
Defendant stated that he had never been in Jack-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Defendant was charged with four alternative counts of first-degree
criminal sexual conduct. Defendant was found guilty under each
alternative, but received only one sentence for the criminal sexual
conduct conviction.

son before the court proceedings in this matter. The prosecution asked defendant if he knew where he was on the night of the offenses. Defendant responded that he was at a party in Detroit. When asked whom he was with on that night, defendant stated that he was with two girls. He knew the first name of one of the girls, but not her last name. After the prosecution asked defendant if he had tried to ascertain the girl's last name, defense counsel objected. However, the trial court found that the line of questioning was proper. Later, in response to the prosecutor's question regarding where defendant had slept on the night in question, defendant replied that he had stayed at the house of Dionte, a friend.

During closing argument the prosecutor made the following comments:

> Now, it's true in a criminal case that the Defendant doesn't have to prove anything. He doesn't have to take the stand, he does not have to produce any proof whatsoever. But he does have the power of subpoena. If there is a Belinda somewhere to assist him in his case or a Diante [sic] somewhere who can assist him in this case, he has the power of bringing those people in to testify and help to support what it is he's trying to prove to you.

Defendant argues that the questions and comments of the prosecutor improperly referred to defendant's failure to produce alibi witnesses and thereby operated to shift the burden of proof to defendant.

Initially, we note that this case is distinguishable from the situation where the prosecutor's comments informed the jury that the defendant initially gave notice of an alibi defense, but was unable to produce witnesses to testify in support of

such a defense. See *People v Shannon,* 88 Mich App 138; 276 NW2d 546 (1979). In this case, defendant himself testified that on the evening of the incidents he was not in Jackson, but was at a party in Detroit.

> It is well settled that a prosecutor is permitted to comment on a defendant's failure to produce "corroborating" witnesses whenever the defendant takes the stand and testifies on his own behalf. [*People v Jackson,* 108 Mich App 346, 351-352; 310 NW2d 238 (1981). See also *People v Jones,* 134 Mich App 371, 373; 350 NW2d 885 (1984).]

We do not agree with defendant's assertion that the above-noted rule should not apply in this case because the testimony establishing an alibi occurred during cross-examination. Defense counsel did not object when the prosecution asked defendant where he was and who he was with on the evening of the incidents. Defendant should not now be heard to complain that the prosecution improperly elicited an alibi defense.

Defendant also objects to the following statement made by the prosecutor during closing argument:

> Mr. Thiede says that the shoes, the Fila shoes, there was no testimony from the officers that the shoes on defendant's feet when he was located in Taylor were the same size as the footprints in the frost. Well, if that was important to him, maybe he should have asked that question.

Prosecution arguments are to be considered in light of defense arguments. *Lawton, supra* at 353. In this case, defense counsel had previously complained:

> Now, the officer said he measured the shoe print

down on the ground and he seized the shoe. Is
there any testimony that they are the same size?
No. Gee, what a difficult thing to do, to fairly treat
this individual, to let us know even if this shoe
that we're going to refer to is the same size as his
shoe, if the shoe print and his shoe match.

We do not believe that the statement made by the
prosecutor in response to defense counsel's argu-
ment served to shift the burden of proof to defen-
dant. Even if the prosecutor's remark was im-
proper, defendant was not denied a fair trial.
Defense counsel promptly objected to the remark
and the prosecutor discontinued his comments on
the subject. Furthermore, the jury was properly
instructed concerning the burden of proof. Lastly,
in light of the strong evidence supporting defen-
dant's convictions, any error was harmless.

II

Next, defendant asserts that his convictions for
both breaking and entering with the intent to
commit larceny and breaking and entering with
the intent to commit armed robbery violate the
constitutional guarantee against double jeopardy.
We agree.

One of the protections afforded by the Double
Jeopardy Clause is the protection against multiple
punishment for the "same offense." *People v Bew-
ersdorf,* 438 Mich 55, 72; 475 NW2d 231 (1991),
cert den sub nom *Johnson v Michigan,* — US —;
112 S Ct 1214; 117 L Ed 2d 452 (1992); *People v
Sturgis,* 427 Mich 392, 398; 397 NW2d 783 (1986).
The constitutional protection against multiple
punishments for the same offense is a restriction
on a court's ability to impose punishment in excess
of that intended by the Legislature. *Id.* at 400.
Accordingly, our examination of the scope of dou-

ble jeopardy protection against judicially imposed multiple punishments for the "same offense" is restricted to a determination of legislative intent. *Id.; People v Guiles,* 199 Mich App 54, 57; 500 NW2d 757 (1993); *People v Harrington,* 194 Mich App 424, 427; 487 NW2d 479 (1992).

Under the federal standard, where the same act or transaction is a violation of two distinct statutory provisions, the test used in determining whether there are two offenses or only one is whether each offense requires proof of a fact that the other does not. *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932); *United States v Dixon,* 509 US —; 113 S Ct 2849, 2856; 125 L Ed 2d 556 (1993).

Michigan courts do not employ the *Blockburger* test. Rather, legislative intent is determined by examining the subject, language, and history of the applicable statutes. *People v Robideau,* 419 Mich 458, 469; 355 NW2d 592 (1984); *Sturgis, supra* at 404-405. This analysis includes consideration of the type of harm each statute is designed to prevent, and the amount of punishment authorized by the statutes. *Id.; Harrington, supra.* A comparison of the elements of the offense may also be helpful. *Sturgis, supra* at 409.

In the present case, defendant was convicted of two counts of breaking and entering, MCL 750.110; MSA 28.305, based upon a single entry into the trailer where the victims were staying. One count alleged breaking and entering with the intent to commit larceny and one count alleged breaking and entering with the intent to commit armed robbery. We conclude that defendant's convictions on both counts violated double jeopardy.

The intent of the breaking and entering statute is to protect the right of peaceful habitation. *People v Winhoven,* 65 Mich App 522, 526; 237 NW2d

540 (1975); *People v Rood,* 83 Mich App 350, 353; 268 NW2d 403 (1978). With regard to punishment, the statute does not distinguish between breaking and entering an occupied dwelling with the intent to commit larceny therein from breaking and entering an occupied dwelling with the intent to commit any other felony, such as armed robbery. MCL 750.110; MSA 28.305. Therefore, we conclude that the Legislature intended to impose the same punishment on defendants for violation of the statute regardless of which felony they intended to commit at the time of the breaking and entering. We are not persuaded by the prosecution's reliance on *People v Smith,* 152 Mich App 756, 761; 394 NW2d 94 (1986), in support of its argument to the contrary. In *Smith,* the defendant was charged under two different statutes, which were designed to prevent distinctive types of harm.

We also reject the prosecution's argument that both convictions were proper because more than one victim was involved. Compare *People v Adams,* 128 Mich App 25; 339 NW2d 687 (1983). The focus of the breaking and entering statute is on the illegal entry. In fact, the statute does not even require that any person be present in the dwelling at the time of the breaking and entering. MCL 750.110; MSA 28.305. Where there has been only one illegal entry, there can be only one conviction under the statute.

Accordingly, defendant's conviction of breaking and entering with the intent to commit larceny is vacated. See, e.g., *People v Jankowski,* 408 Mich 79, 96; 289 NW2d 674 (1980). We do not believe that remand for resentencing is required. There is nothing in the record to indicate that vacating one of the breaking and entering convictions would affect defendant's sentences for the remaining convictions. See part IV *infra.*

III

Next, defendant argues that the trial court erred in not giving defendant's requested instruction concerning third-degree criminal sexual conduct. *People v Mosko,* 441 Mich 496, 501, 503; 495 NW2d 534 (1992). Although the lesser offense of third-degree criminal sexual conduct is necessarily included within the more serious offense of first-degree criminal sexual conduct, the failure to instruct with regard to the lesser included offense does not mandate reversal if the failure to give the requested instruction was harmless error.

We conclude that even though no instruction regarding an intermediate charge was given, the error was harmless. *Id.* at 505. Defendant was charged, in the alternative, with four counts of first-degree criminal sexual conduct based upon four different aggravating factors. Under the facts of this case, first- and third-degree criminal sexual conduct are distinguished by the presence of the aggravating factors. *People v Hurst,* 132 Mich App 148, 152; 346 NW2d 601 (1984). Although defendant was sentenced on only one count of first-degree criminal sexual conduct, the jury found that each aggravating factor had been established.[2] Thus, the jury's verdict includes specific findings that would preclude a conviction of third-degree criminal sexual conduct. See *People v Beach,* 429 Mich 450, 492; 418 NW2d 861 (1988). The failure

---

[2] Defendant was convicted of criminal sexual conduct in the first degree on the basis of the jury's finding that (1) the sexual penetration occurred during the commission of another felony, MCL 750.520b(1)(c); MSA 28.788(2)(1)(c); (2) defendant was aided and abetted and used force or coercion to accomplish the sexual penetration, MCL 750.520b(1)(d)(ii); MSA 28.788(2)(1)(d)(ii); (3) defendant was armed with a weapon, MCL 750.520b(1)(e); MSA 28.788(2)(1)(e); and (4) defendant caused personal injury to the victim and penetration was accomplished through force or coercion, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f).

to give the requested instruction was harmless beyond a reasonable doubt. *People v Winans,* 187 Mich App 294, 299; 466 NW2d 731 (1991).

IV

Defendant asserts that his sentences of fifty to seventy-five years for his criminal sexual conduct and armed robbery convictions violate the principle of proportionality announced in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). We disagree.

Before sentencing in this case, defendant was convicted of being a second-felony habitual offender, MCL 769.10; MSA 28.1082. Although the sentencing guidelines are inapplicable to habitual offender sentencing, the guidelines for the underlying offense are a useful reference point for determining the proportionality of an habitual offender sentence. *People v Odendahl,* 200 Mich App 539; 505 NW2d 16 (1993).

In this case, the guidelines' recommendation for the underlying offense of first-degree criminal sexual conduct provided for a minimum sentence of twenty to forty years or life.[3] As an habitual offender, defendant was eligible to receive a maximum sentence that was fifty percent greater than the statutory maximum. Accordingly, we believe it is appropriate to review defendant's sentence by comparing the guidelines' recommendation to the degree of sentence enhancement authorized by the Legislature. *People v Williams,* 191 Mich App 685, 686-687; 479 NW2d 36 (1991). In this case, defendant's minimum sentence of fifty years exceeded the upper end of the guidelines' recommendation

---

[3] The sentencing information report, in recognition of defendant's habitual offender conviction, stated a minimum sentence range of thirty to sixty years, a fifty percent increase in the minimum sentence range.

by twenty-five percent. However, we note that defendant's score of 115 points under the offense variables and 70 points under the prior record variables sends him "off the grid." Under the circumstances, we find no violation of the principle of proportionality.

V

The prosecution argues on cross appeal that defendant should have been sentenced for two counts of first-degree criminal sexual conduct because evidence presented at trial established that two penetrations occurred.

We will not review this issue on appeal because the prosecution did not raise it before the trial court. *People v Stacy,* 193 Mich App 19, 29; 484 NW2d 675 (1992). In fact, the prosecutor at trial specifically agreed with defense counsel that the information did not charge defendant with separate acts of penetration, but with four alternative counts involving different aggravating factors and that defendant could only be convicted and sentenced with regard to one count.

We reverse and vacate defendant's conviction of breaking and entering with intent to commit larceny. We affirm defendant's remaining convictions and sentences.

D. C. KOLENDA, J. *(concurring).* While I concur in the result reached by the majority and with most of what the majority says in support of that result, I disagree with the harmless error analysis in part III. I agree that the trial court's refusal to instruct concerning third-degree criminal sexual conduct was harmless error, but not for the reason stated by the majority. That the jury found defendant guilty of all four alternative forms of first-degree

criminal sexual conduct charged against him does not establish that that jury would have rejected the alternative of third-degree criminal sexual conduct. That a jury does not acquit when that is the only alternative to a conviction proves nothing about how it would have considered another alternative. A jury confronted with the choice of acquitting a guilty defendant because the crime does not precisely fit the available guilty verdict is likely to return a verdict of guilty, not a verdict of acquittal.

The refusal in this case to instruct regarding a lesser offense was harmless because the jury's verdicts in this case bespeak findings of fact that preclude a conviction of third-degree criminal sexual conduct. The verdict of guilty of first-degree criminal sexual conduct means that the jury found that defendant had engaged in forced sexual penetration with the complainant. The offense consists of penetration plus an aggravating factor. The verdict of guilty of the breaking and entering charge establishes that the sexual misconduct occurred during the commission of another felony, making it criminal sexual conduct in the first degree as charged. For that reason, but only for that reason, it necessarily follows that the option of third-degree criminal sexual conduct would have been rejected had it been presented, rendering harmless the instructional error in this case. *People v Beach,* 429 Mich 450, 492; 418 NW2d 861 (1988).

The analysis to which this separate opinion is directed is, I believe, important for the jurisprudence of this state. The majority's different analysis invites ill-advised conduct by prosecutors. That analysis sanctions overcharging. By parsing a single offense into alternatives and charging them separately, a prosecutor can avoid appropriate

instructions involving lesser included offenses if, as will usually happen, the jury opts to convict a guilty individual, albeit of too much, rather than acquit. The majority's analysis, while leading to the right result, is ill-advised because it gives prosecutors an easy way to hide potentially significant error.